T.C. Memo. 1998-323


UNITED STATES TAX COURT


ESTATE OF HONORE V. DE ST. AUBIN, DECEASED, OVIDE E.
DE ST. AUBIN, EXECUTOR, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 39493-87, 32807-88,     Filed September 14, 1998.
            32808-88, 32809-88,
            32811-88, 32926-88,
            32994-88, 32995-88,

---

[1]Cases of the following petitioners are consolidated herewith:  Trust No. 4 Under Article 7th UWO Ovide de St. Aubin, Jr., FBO Celeste Schettig, Transferee, Corinne Shaw & Ovide E. de St. Aubin, Trustees, docket No. 32807-88; Trust No. 1 Under Article 7th UWO Ovide de St. Aubin, Jr., FBO Corinne Shaw, Transferee, Corinne Shaw and Ovide E. de St. Aubin, Trustees, docket No. 32808-88; Celeste Schettig, Transferee, docket No. 32809-88; Trust No. 2 Under Article 7th UWO Ovide de St. Aubin, Jr., FBO Ovide E. de St. Aubin, Transferee, Corinne Shaw and Ovide E. de St. Aubin, Trustees, docket No. 32811-88; Honore V. O'Brien, Transferee, docket No. 32926-88; Ovide E. de St. Aubin, Transferee and Fiduciary, docket No. 32994-88; Corinne Shaw, Transferee and Fiduciary, docket No. 32995-88; and Trust No. 3 Under Article 7th UWO Ovide De St. Aubin, Jr., FBO Honore V. O'Brien, Transferee, Corinne Shaw and Ovide E. de St. Aubin, Trustees, docket No. 32996-88.

32996-88.

Joseph M. Persinger, Jonathan G. Blattmachr, and Jessica A. Feder, for petitioners.

Jill A. Frisch, Howard J. Berman, Steven Winningham, and Robert B. Marino, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge: Pursuant to Rule 121, this matter is before the Court on petitioners' motion for partial summary judgment and respondent's cross-motion for partial summary judgment. The motions raise three issues: (1) Whether Honore V. de St. Aubin, as the income beneficiary of both the marital trust and the residuary trust to be established under her husband's will, possessed a claim to a portion of the proceeds from the sale of certain stock holdings of his estate; (2) whether the marital trust established for the benefit of Honore V. de St. Aubin is entitled to share in the appreciation of the undistributed assets of her husband's estate; and (3) whether Honore V. de St. Aubin or her estate had a right to compel funding of the marital trust with interest at the legal rate. At issue are purported claims of decedent and her estate against her husband's estate and against the trusts established under her husband's will, which was executed in 1966. If any of

these purported claims is valid, the value of decedent's estate will rise and thus also the estate tax liability of her estate. To determine the validity of these claims, we must examine Mr. de St. Aubin's will, his estate, and the trusts created under the will.

FINDINGS OF FACT

Honore V. de St. Aubin (decedent) died December 27, 1983. Sixteen years earlier, on November 18, 1967, her husband, Ovide de St. Aubin, Jr. (Mr. de St. Aubin), died, survived by decedent and their four adult children, Ovide E. de St. Aubin (the younger Mr. de St. Aubin), Honore O'Brien, Corinne Shaw, and Celeste Schettig.

Decedent's husband provided for her in his will. Under Article Fourth of his will, he devised to Honore his house and land located in New Rochelle, New York, which had an estate tax value of $73,500. Under Article Fifth of his will, he bequeathed to Honore all of his personal property, including a yacht and two automobiles. The personal property had an aggregate estate tax value of $145,749. Decedent's husband had also designated her as beneficiary of insurance policies on his life, with an aggregate value of more than $175,000. In addition, decedent owned insurance on her husband's life, which paid her a death benefit of more than $100,000.

Mr. de St. Aubin's will establishes two trusts for the benefit of decedent.  Article Sixth of the will creates a marital trust.  The will names decedent as the income beneficiary of that trust, and it grants her a testamentary power of appointment over the assets of the marital trust.  Article Sixth directs that the marital trust be funded with an amount equal to 50 percent of the adjusted gross estate less the aggregate value of all interests in Mr. de St. Aubin's property that pass to decedent outright through her husband's will, or "otherwise than under [his] will, by operation of law, through life insurance policies, or otherwise".  With respect to funding, Article Sixth provides:

> My executors, hereinafter named, shall have the power and sole discretion to satisfy this bequest wholly or partly in cash or in kind and to select the assets to be included therein, provided, however, that all such assets included shall be valued at the value thereof as finally determined for Federal estate tax purposes, and that the total value of such cash and/or property at the time of distribution to my said trustees shall be at least equal to the amount of this bequest.

Article Sixth directs that the entire net income be paid to decedent at least quarterly.  The will does not authorize invasion of the principal of the marital trust for decedent's benefit.  Under Article Sixth, the marital trust

was to be undiminished by estate taxes, which were to be paid from the residuary trust established under Article Seventh.

Article Seventh of Mr. de St. Aubin's will directs that the remainder of his estate be placed in a residuary trust with decedent as the income beneficiary. The will provides no guidance regarding the frequency of payments of income. He granted the trustees discretion to invade the principal of the residuary trust for decedent's benefit, up to a total of 50 percent of the value of the corpus. Decedent held no power of appointment over the residuary trust. Rather, Article Seventh provides that upon her death, the remaining principal would be equally divided and placed in four separate residuary trusts, with the income therefrom paid to their four children. The trust principal would eventually devolve to the descendants of the children.

Article Eleventh of Mr. de St. Aubin's will applies to the sale of property that forms a part of the estate principal or a part of the corpus of any trust created under the will. This article provides as follows:

> All profits and losses realized upon the sale of
> any real or personal property forming a part of
> the principal of my estate or any such trust
> shall be added to, or charged against, the
> principal thereof.  * * *

Article Twelfth of Mr. de St. Aubin's will authorizes the retention, sale, and investment of property that he owned at the time of his death.  This article provides as follows:

> I authorize and empower my executors and trustees * * * to sell and convey the whole or any part of the property, real, personal, or mixed, belonging to my estate or to any such trust estate, at public or private sale, on such terms and conditions as may seem to them expedient, * * * [to] invest and reinvest any or all such personal property; * * * to retain as part of my estate or any trust estate hereby created any real estate, stocks, bonds, loans or other investments which I may own at the time of my decease; to invest and reinvest the funds of my estate or any such trust estate in such securities or investments, including common and preferred stocks and bonds, as they, in their absolute discretion, may deem advisable * * *

Mr. de St. Aubin's will named decedent and their son as executors.

At the time of Mr. de St. Aubin's death, his estate included two parcels of real property located in Hempstead, New York.  One is known as the Malibu Beach property, which has an estate tax value of $1,500,580.  The other is known as the Channel Land, which has an estate tax value of $1,310,100.  The other principal assets of his estate included:  52 percent of the outstanding common stock of Vesta Underwear Co. (Vesta Underwear), a clothing

manufacturer subsequently renamed Modern Globe, Inc., with an estate tax value of $371,500; 49 percent of the common stock of Pohatcong Hosiery Mills, Inc. (Pohatcong Hosiery), a personal holding company with an estate tax value of $812,918; 4 percent of the common shares of Vesta Corp., a personal holding company, with an estate tax value of $15,756; and 25 percent of the common stock of Fairlee Textile Co. (Fairlee), a personal holding company with an estate tax value of $52,760. On audit, respondent determined the Federal estate tax value of Mr. de St. Aubin's gross estate to be $5,699,575.48 and the value of the adjusted gross estate to be $3,848,912.65. Respondent allowed an estate tax marital deduction of $1,924,456.33.

On May 15, 1968, the town of Hempstead, New York, condemned the Malibu Beach property. Mr. de St. Aubin's estate engaged the town in protracted litigation regarding the value of the property. The estate received interim payments against the condemnation award in 1969 and 1972, totaling $939,000. The estate used these interim payments to pay at least a portion of its expenses. The town paid the estate interest of $141,800 on the interim payments in 1973. In 1985, the parties reached a settlement in which

the estate accepted an additional $975,000 as full compensation for the property.

The executors determined that to obtain what they felt was a reasonable sales price for the Channel Land, the property had to be filled and zoned for multiple family dwellings. In 1972, the estate requested a zoning variance. Effective September 1, 1973, pursuant to the New York Tidal Wetlands Act, N.Y. Envtl. Conserv. Law, secs. 25.0101 through 25.0601 (McKinney 1997), a portion of the Channel Land was classified as wetlands, and its development was prohibited. At the time of these motions, in a pending State court action, Mr. de St. Aubin's estate was seeking compensation from the State of New York for the loss of the development rights for this property. By the time of these motions, his estate had incurred significant expenses in connection with the litigation involving the Malibu Beach property and the Channel Land.

On or about March 31, 1969, by operation of a trust established by Mr. de St. Aubin's father, 48 percent of the shares of Vesta Corp. passed to Ms. Lorraine O'Hayer, Mr. de St. Aubin's sister, and 48 percent passed to decedent. Each woman received 624 shares of Vesta Corp. The record supplies no indication of the 1969 value of these shares. However, based on values used in Mr. de St.

Aubin's estate tax return, this distribution had a value of $303 per share for a total of $189,072 per block at the time of his death in 1967.

Prior to Mr. de St. Aubin's death, there developed friction between his immediate family and that of his sister, Ms. O'Hayer. As a result of this ongoing friction, decedent's husband had been attempting to attain 100 percent St. Aubin control of Vesta Corp. and Vesta Underwear. At the time of his death, litigation was pending between Mr. de St. Aubin and Ms. O'Hayer regarding the ownership of the remaining 4 percent of the common stock of Vesta Corp. and regarding certain actions taken by Mr. de St. Aubin as trustee of the trust established by their father. In 1969, in settlement of this litigation, Mr. de St. Aubin's family and his estate caused Vesta Underwear to redeem the 48 percent of its common stock owned by the O'Hayer family. After elimination of the O'Hayer interest, the estate was the sole owner of Vesta Underwear common stock. Vesta Underwear also purchased the 48 percent of Vesta Corp. common stock owned by the O'Hayers.

Simultaneously with the above redemption and purchase by Vesta Underwear, Pohatcong Hosiery purchased the O'Hayer shares of Vesta Corp. preferred stock and Vesta Underwear

preferred stock. In addition, Pohatcong Hosiery redeemed the O'Hayer shares of its own common and preferred stock. Finally, Fairlee redeemed all stock held by the O'Hayer family. As a result of the transactions described above, the O'Hayer family relinquished its minority interests in Vesta Underwear, Vesta Corp., Fairlee, and Pohatcong Hosiery. The total purchase price for those interests was approximately $2,200,000.

At the time of the O'Hayer buyouts, the younger Mr. de St. Aubin was the president and chairman of the board of Vesta Underwear. Decedent had also been a member of the board of directors of Vesta Underwear. Shortly after the buyouts of the O'Hayer holdings, Vesta Underwear changed its name to Modern Globe, Inc. Vesta Underwear and Modern Globe are sometimes hereinafter referred collectively to as "Modern Globe".

In the early 1970's, Pohatcong Hosiery and Vesta Corp. were involved in corporate restructuring with Pohatcong Investors, Inc., another personal holding company. It appears that the two former corporations were dissolved, and only Pohatcong Investors survived. Decedent and her son were directors of Pohatcong Investors from its incorporation in February 1971. Pohatcong Hosiery and

Pohatcong Investors are sometimes hereinafter collectively referred to as "Pohatcong Investors".

After the buyout of the O'Hayer family and the corporate restructurings, the estate of Mr. de St. Aubin held 100 percent of the common stock of Modern Globe and approximately 68 percent of the common stock of Pohatcong Investors. At the same point, decedent and her children and grandchildren owned all of the remaining common stock of Pohatcong Investors. However, at her death, decedent owned no common or preferred stock of Pohatcong Investors or Modern Globe, as a result of gifts made to her children and grandchildren throughout her life.

From 1969 through 1988, Pohatcong Investors declared dividends on its preferred stock every year. It paid dividends on its common stock every year except 1970. Modern Globe declared dividends on its preferred stock nearly every year between 1968 and 1985. Modern Globe paid dividends on its common stock in 4 of the 16 years between Mr. de St. Aubin's death and decedent's death. During decedent's lifetime, her husband's estate, the owner of all the common stock of Modern Globe, received a total of $178,873 in dividends on that common stock as follows:

|  |  |
|---|---|
| 6/14/71 | $108,420 |
| 10/29/74 | 6,753 |
| 10/25/75 | 31,200 |

10/26/77    <u>32,500</u>

178,873

Modern Globe paid no dividends on its common stock for at least 5 years prior to Mr. de St. Aubin's death and at least 3 years prior to the execution of his will.  Prior to Mr. de St. Aubin's death, Modern Globe was experiencing financial difficulties.  At the time he executed his will, a bank loan agreement prohibited Modern Globe from paying dividends without prior written bank consent.

In the late 1970's and early 1980's, Modern Globe's fortunes greatly improved.  Modern Globe's board of directors chose to reinvest earnings in the corporation in order to satisfy existing debt and to avoid incurring additional debt during an anticipated expansion of the business.  To those ends, Modern Globe retained earnings of approximately $12.8 million in 1978, which increased to approximately $23.5 million in 1984.

During the administration of Mr. de St. Aubin's estate, after the estate gained control of Modern Globe and Pohatcong Investors, the two corporations regularly lent money to the estate, often interest free.  The principal amount of the loans to the estate was more than $2 million.  In addition, Modern Globe guaranteed lines of credit to the estate in the amounts of $500,000 in 1974, $1 million in

1983, and $2 million in 1984. Modern Globe received no consideration for the guaranties.

During the administration of Mr. de St. Aubin's estate, Modern Globe regularly made interest-bearing demand loans to Pohatcong Investors, including $1 million lent on an "available as required" basis, beginning in October 1979. Modern Globe demanded repayment when it required additional working funds. The loans were structured to be profitable for both corporations, bearing a higher interest rate than Modern Globe could safely earn in the market, but lower than the market loan rates available to Pohatcong Investors.

During the period from Mr. de St. Aubin's death in 1967 until sometime in 1983, decedent received the personal use of a Cadillac or Oldsmobile automobile and a chauffeur supplied by Modern Globe Sales, Inc., a wholly owned subsidiary of Modern Globe. The record does not state whether decedent received use of the car and driver because of her status as a director of Modern Globe, as income beneficiary of one or both of the trusts, or otherwise. In 1981, decedent suffered an incapacitating stroke. The record does not state how the stroke affected decedent's use of the car and driver. After the stroke, Chester Nuttal, controller of Modern Globe, replaced decedent on

the boards of directors of Modern Globe and Pohatcong Investors. However, decedent continued as coexecutor of her husband's estate until her death.

From 1967 through 1977, decedent received no income or benefits from Mr. de St. Aubin's estate apart from the use of the car and driver. There is no indication that the estate paid any income to her between 1977 and her date of death. However, Modern Globe and Modern Globe Sales, Inc., made interest-free loans to decedent. Decedent generally repaid these loans monthly or annually.

The executors of Mr. de St. Aubin's estate, decedent and her son, failed to fully fund the marital trust during decedent's lifetime. During her lifetime, the following distributions were made to the marital and residuary trusts:

| Date of Distribution | Marital Trust | Residuary Trust |
|---|---|---|
| 10/05/79 | -- | 230 shares Pohatcong Investors |
| 10/29/79 | $70,000 | $100 |
| 10/01/80 | -- | 115 shares Pohatcong Investors |
| 10/30/80 | 23,000 | -- |
| 10/01/81 | -- | 82 shares Pohatcong Investors |
| 10/23/81 | 64,500 | -- |
| 10/04/82 | 110 shares Pohatcong Investors | 110 shares Pohatcong Investors |
| 10/26/82 | 92,500 | -- |

| 10/04/83 | -- | 105 shares Pohatcong Investors |
| 10/26/83 | 60,000 | -- |

The executors distributed to the residuary trust shares of Pohatcong Investors with a basis of $205.75 each. They distributed to the marital trust shares of Pohatcong Investors with a basis of $415.43 each. The records of Mr. de St. Aubin's estate indicate that the Pohatcong Investors stock distributed to the marital trust had a fair market value of $400 per share at the time of its distribution. Those records also indicate that the shares distributed to the residuary trust had fair market values ranging from $375 to $540 on the dates of their distribution.

Upon decedent's death, by operation of her will, her daughter Corinne Shaw replaced her as coexecutor of Mr. de St. Aubin's estate. In addition, decedent's will appointed Ms. Shaw and decedent's son, the younger Mr. de St. Aubin, as executors of decedent's estate. In her will, decedent exercised her general power of appointment over the marital trust in favor of her four children in equal shares.

As mentioned above, the marital trust was not fully funded at the time of decedent's death. The marital trust

was further funded in 1984 after Modern Globe guaranteed a $2 million bank loan for Mr. de St. Aubin's estate. Mr. de St. Aubin's estate subsequently obtained a loan and distributed $1,560,932.80 to the marital trust. Pursuant to Mr. de St. Aubin's will, upon decedent's death, the assets of the residuary trust were divided into four residuary trusts, one for the benefit of each of their children. Thereafter, Mr. de St. Aubin's estate transferred the Modern Globe common stock to the residuary trusts.

In 1984, sometime after the transfer of the Modern Globe stock, Modern Globe paid a dividend of $4.16 million to the residuary trusts, $3,200 per common share. In September 1984, the residuary trusts sold the Modern Globe assets to an unrelated party for $35 million. In 1985, Modern Globe paid a dividend of $23,000 per common share to the residuary trusts, for a total of $29,900,000. The residuary trusts then repaid the loan obtained by Mr. de St. Aubin's estate.

At the time of the filing of these motions, the administration of Mr. de St. Aubin's estate had not been concluded, and no accounting had been made by his executors, the trustees of the marital trust, or the trustees of the residuary trust.

For each year of the estate's administration, Mr. de St. Aubin's estate has filed a United States Fiduciary Income Tax Return, Form 1041. The Internal Revenue Service requested that his executors justify the continued existence of the estate as a taxpayer for the tax years ending October 31, 1981, and October 31, 1982. The executors submitted responses, and the Internal Revenue Service did not further contest the estate's right to continued existence as a taxpayer for income tax purposes.

Decedent's executors filed her United States Estate Tax Return, Form 706, with the Internal Revenue Service on September 27, 1984. Thereafter, respondent issued a notice of deficiency to the executors of decedent's estate asserting a deficiency in Federal estate tax in the amount of $20,607,275.29. Corinne Shaw and Ovide E. de St. Aubin, acting in their capacity as executors, filed a petition with this Court to dispute the entire amount of the deficiency.

Subsequently, respondent determined that, as fiduciaries, Ovide E. de St. Aubin and Corinne Shaw are each personally liable for the entire estate tax deficiency. Accordingly, respondent issued notices of deficiency to Ovide E. de St. Aubin and Corinne Shaw for Federal estate tax due from the estate as fiduciaries

and as transferees of the assets of decedent's estate. Respondent also issued notices of deficiency to decedent's other daughters, Celeste Schettig and Honore O'Brien, as transferees of assets from the estate of Honore, but limited their liability to $169,404 each. In addition, respondent issued notices of deficiency to the four residuary trusts established in Mr. de St. Aubin's will as transferees of assets of the estate of decedent. The notices limited the trusts' liability to $8,595,606.80 each. The issue of transferee liability arose by reason of the transfer of assets to petitioners that respondent contends are includable in decedent's gross estate. The above-named petitioners filed timely petitions with this Court. They dispute the entire amounts of the deficiencies.

OPINION

Petitioners request the following three holdings in their motion for partial summary judgment:

1. Neither Honore V. de St. Aubin ("Honore") nor her Estate had a claim to "delayed income" under the New York Principal and Income Act (Estates, Powers and Trust Law ["EPTL"] §11-2.1) at the date of Honore's death with respect to the shares of stock in Modern Globe, Inc. held by the estate of her husband, Ovide de St. Aubin ("Ovide");

2. Neither Honore nor her Estate had a claim to have the marital trust created under Article Sixth of Ovide's will funded with more than the pecuniary amount allowed as a marital deduction in the estate tax proceeding in her husband's estate; and

3. Neither Honore nor the Estate had a claim under EPTL to compel funding of her pecuniary trust with interest at the legal rate.

Respondent opposes petitioners' motion. The Commissioner has also filed a cross-motion for partial summary judgment, which addresses the same substantive issue as petitioners' second request above. Respondent seeks a ruling that "The marital trust is entitled to share in a representative portion of the appreciation of Ovide's estate occurring during the period of administration".

Rule 121(b) of the Tax Court Rules of Practice and Procedure provides that a motion for summary judgment shall be "rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." All Rule references are to the Tax Court Rules of Practice and Procedure, unless noted otherwise. The burden of proof on a motion for partial summary judgment is on the moving party to show that no genuine issues of material fact

exist.  <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). All reasonable inferences must be drawn in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-250 (1986); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985).

Once a motion for summary judgment is properly supported, the adverse party may not rest on its pleadings. Rather, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Rule 121(d); <u>Williams v. Borough of West Chester</u>, 891 F.2d 458 (3d Cir. 1989); <u>Marshall v. Commissioner</u>, 85 T.C. 267, 271 (1985).  However, Rule 121(e) provides an exception to the above Rule.  Rule 121(e) provides as follows:

> (e) When Affidavits Are Unavailable:  If it appears from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits to be obtained or other steps to be taken or may make such other order as is just.  If it appears from the affidavits of a party opposing the motion that such party's only legally available method of contravening the facts set forth in the supporting affidavits of the moving party is through cross-examination of such affiants or the testimony of third parties from whom affidavits cannot be secured, then such a showing may be deemed sufficient to establish that the facts set forth in such supporting affidavits are genuinely disputed.

Respondent argues that, by application of Rule 121(e), the Court should deny petitioners' motion for partial summary judgment. Respondent asserts that the manner in which Mr. de St. Aubin's estate was administered is a material fact in dispute. The Commissioner further contends that petitioners are in possession and control of the information regarding this material fact, and that the Commissioner's only legally available method of controverting the facts set forth by petitioners is through the examination of petitioners' affiants or through examination of hostile witnesses from whom affidavits cannot be secured. Therefore, respondent states that, pursuant to Rule 121(e), petitioners should not be able to prevent respondent from cross-examining petitioners' witnesses by filing a motion for partial summary judgment.

Petitioners attached the affidavit of Martin Drazen to their motion for partial summary judgment. In addition, petitioners attached the affidavits of Chester Nuttall, Ovide E. de St. Aubin, and Corinne Shaw to their supplemental memorandum of law. Respondent has not disputed the material facts that are contained therein. As will be explored herein, the other facts that respondent claims are in dispute are immaterial to the resolution of

of the three questions placed before this Court.
Therefore, based on the information in the record, we are
able to rule on two of the issues before the Court.  We
note that these are issues of New York State law.  Where
a Federal tax result turns on an unsettled matter of State
law, we sit, in effect, as a State court.  Commissioner v.
Estate of Bosch, 387 U.S. 456, 465 (1967).

I.  Claim for Delayed Income Under EPTL Section 11-2.1(k)

Decedent was the income beneficiary of both the
marital trust and the residuary trust established in her
husband's will.  As a result, she was entitled to all of
the income produced by the trust assets during her life-
time.  We note that Mr. de St. Aubin's will provides that,
after payment of specific bequests, all of the net assets
of his estate were eventually to become a part of one of
these trusts.  The trusts were not fully funded during
decedent's lifetime.  After her death, the executors of
her husband's estate funded the marital trust with an
additional $1,560,932.80 in cash.

The executors of Mr. de St. Aubin's will also
transferred the common stock of Modern Globe from his
estate to the residuary trusts that were to be established
under his will for the benefit of each of his children at
decedent's death.  Thereafter, Modern Globe paid a dividend

to the residuary trusts totaling $4.16 million.  In September 1984, the residuary trusts sold Modern Globe's operating assets for $35 million.  Subsequently, the corporation paid a $29,900,000 dividend to the trusts, and the trustees of the residuary trusts liquidated Modern Globe.

Respondent determined that decedent, as the income beneficiary of both the marital trust and the residuary trust, possessed a claim for delayed income under N.Y. Est. Powers & Trusts Law (EPTL) section 11-2.1(k) (McKinney 1967) (sometimes referred to as the delayed income provision), with respect to a portion of the proceeds derived from the sale of Modern Globe.  Respondent determined the value of this claim to be $13,461,477.

Petitioners move for a holding that neither decedent nor her estate had a claim for delayed income under EPTL section 11-2.1(k) at the time of her death.  Petitioners contend that, on the basis of the undisputed facts, this Court can find that the delayed income provision does not apply in these cases because Mr. de St. Aubin's will provides a method for allocating the proceeds from the sale of property held by his estate and the trusts set up thereunder.  As a result, petitioners argue, the proceeds from the sale of Modern Globe must be allocated to

principal, pursuant to Mr. de St. Aubin's will.  In the alternative, petitioners argue that if the will does not control the allocation of the sales proceeds from the Modern Globe assets, the amended, 1987 version of EPTL section 11-2.1(k) (the 1987 provision) applies, rather than the version in effect at the time of decedent's death (the 1965 provision).  However, petitioners argue that the Modern Globe stock was not underproductive within the meaning of either version of EPTL section 11-2.1(k), and, therefore, application of the statute would not affect the allocation of the proceeds from the sale of the Modern Globe assets.  As a final alternative, petitioners argue that the delayed income provision does not apply in any event because EPTL section 11-2.1(e)(6) (McKinney 1967), which requires that proceeds from liquidation of stock be allocated to principal, is applicable and overrides EPTL section 11-2.1(k).

Respondent argues that summary judgment is not warranted because there are unresolved, material questions of fact that will affect the resolution of this issue. Respondent argues that EPTL section 11-2.1(k) applies because Mr. de St. Aubin's will and his overall estate plan indicate no clear and explicit intent to override the delayed income provision.  Respondent contends that the

question of Mr. de St. Aubin's intent is a factual question that will require a hearing to resolve.  Respondent further asserts that the 1965 provision controls this question, rather than the 1987 provision.  Respondent contends that the applicability of the 1965 provision in place of the 1987 provision depends upon the manner in which Mr. de St. Aubin's executors carried out their duties, another subject of a factual dispute.  Respondent asserts that, under the 1965 provision, the Modern Globe stock was underproductive property, and, therefore, a portion of the proceeds from the sale of the Modern Globe assets should be allocated to decedent as income beneficiary of both trusts. Respondent further argues that even if the 1987 provision applies, the "inventory value" of the Modern Globe stock under that version of EPTL section 11-2.1(k) presents a material question of fact.  Finally, respondent contends that EPTL section 11-2.1(e)(6) is compatible with, and does not override, EPTL section 11-2.1(k).

We find it unnecessary to decide the question of whether Mr. de St. Aubin intended to override the delayed income provision because, even if EPTL section 11-2.1(k) does apply to these cases, it requires no allocation of profits from the sale of the Modern Globe assets to income.

Before applying EPTL section 11-2.1(k), we must decide whether the 1987 provision or the 1965 provision applies. In passing the 1987 amendments, the New York State legislature provided the following instruction:

> This act shall take effect immediately [July 30, 1987] and shall apply to proceeds received during any period as to which the fiduciary's account has not been settled prior to such effective date, whether the proceeds were received prior to or after such effective date by any trust * * * established before, on or after the effective date hereof. [1987 N.Y. Laws ch. 495, sec. 2.]

As of the date of these motions, Mr. de St. Aubin's executors' accounts had not been settled. Therefore, the 1987 provision is controlling, although the amendment to the statute was made more than 20 years after the execution of Mr. de St. Aubin's will. See In re Allister, 545 N.Y.S.2d 483 (Sur. Ct. 1989) (applying EPTL section 11-2.1(k), as amended in 1987, in a proceeding in which the decedent died in 1969 and her beneficiary died in 1985).

Respondent argues that this Court should supplant the effective date supplied by the legislature because of the actions of Mr. de St. Aubin's executors, and, therefore, the 1965 provision should apply. In this regard, respondent has made numerous allegations regarding the propriety of the actions of the executors. Respondent

argues that "the executors of Ovide's Estate have failed to honor Ovide's intent in administering his estate and thereby have breached their fiduciary obligations. Respondent posits that factual issues exist regarding the executors' intention to deprive Honore of the beneficial enjoyment required by the statute". Respondent further asserts that the executors could have made an interim accounting of Mr. de St. Aubin's estate but chose not to do so. Respondent contends that such an interim accounting would have exempted the estate from the application of the amended version of EPTL section 11-2.1(k) but cites no controlling authority. In addition, respondent states:

> Petitioners appear to take the untenable position
> that even if it is determined that those
> administering Ovide's Estate breached their duty
> to the income beneficiary, and that the Modern
> Globe stock should have been converted or made
> income producing at an earlier date, there is no
> remedy available to the income beneficiary
> because the amended statute applies.

We reject respondent's argument. The legislature supplied a clear effective date for the amended statute. Further, respondent concedes that New York does not require interim accountings. In addition, respondent has presented this Court with no precedent from New York or from any other jurisdiction to support the argument that we may and should supply an alternative effective date for the State

statute under any circumstances.  We note that reallocation of proceeds under EPTL section 11-2.1(k) is triggered by failure to meet an objective standard of productivity. The statute does not require or allow different treatment as a result of the cause a failure to meet that level of productivity.

Application of the 1987 provision results in no reallocation of proceeds.  EPTL section 11-2.1(k)(1), as amended in 1987, provides as follows:

> Except as otherwise provided in this paragraph (k), a portion of the net proceeds of a sale by a fiduciary  * * * of any principal property of an estate or trust * * * held for more than a year which has not produced over the period held an average net income of one percent per annum of its inventory value (including as income the value of any beneficial use of the property by any income beneficiary), shall be allocated to income as delayed income, as provided in this paragraph (k).  * * *

EPTL section 11-2.1(o)(4) defines "inventory value", for purposes of section 11-2.1, as "the cost of property purchased by the trustee and the market value of other property at the time it was made subject to the trust." The parties dispute the meaning of the phrase "made subject to the trust".  Petitioners assert that EPTL section 11-2.1(c)(1) provides that Mr. de St. Aubin's assets were "made subject to the trust" as of his date of death.

Respondent contends that, in these cases, "The inventory value of Modern Globe stock should be determined at the date the Trusts should have been funded."  Respondent argues that, because that date is a disputed matter of fact, petitioners' motion for summary judgment should be denied.  Respondent also appears to assert that the stock was not "made subject to the trusts" until the trusts were actually funded in 1984.  However, respondent concedes that, if the inventory value is to be determined as of Mr. de St. Aubin's date of death, petitioner's estate possessed no right to delayed income from the Modern Globe stock.

EPTL section 11-2.1(c)(1), which defines the point at which the right to income arises, states:  "In the case of an asset which becomes subject to a trust by reason of a will, it becomes subject to the trust as of the date of the death of the testator even though there is an intervening period of administration of the testator's estate."  An identical proposition has long been reflected in the case law.  See, e.g., In re Bird's Will, 149 N.E. 827, 828 (N.Y. 1925); In re Stanfield's Estate, 31 N.E. 1013, 1014 (N.Y. 1892); In re Ahren's Estate, 196 N.Y.S. 313, 314 (App. Div. 1922); In re Will of Osterlof, 343 N.Y.S.2d 896, 898 (Sur. Ct. 1973); In re Myers' Trust, 190 N.Y.S.2d 566, 571 (Sup.

Ct. 1959). Clearly, an income beneficiary's right to the income from assets arises under State law at the testator's date of death. Therefore, it is appropriate to gauge the adequacy of the flow of income from the assets by the value of the assets at the date of death.

In support of the Government's argument, respondent cites a single commentator, George C. Barclay, who states that:

> Originally inventory value in the case of testamentary trusts was equated with the value used for estate tax purposes. However, this meant that a trustee to whom the assets were delivered at a much later date was being charged with values which might bear no relation to the values at the time he received the assets. Thus, inventory value is now defined simply as the cost of property or its value when made subject to the trust.

Barclay, "The Principal and Income Act", 33 Brook. L. Rev. 489, 498 (1967). Mr. Barclay's commentary does not directly address the issue at hand. In fact, this statement seems directed toward protecting fiduciaries who receive assets after their values have fallen below their original inventory values. Further, Mr. Barclay's statement offers no support to respondent's claim that the inventory value of the Modern Globe stock should be determined as of the date when the trusts "should have been funded".

Before leaving this issue, we answer respondent's concern that our application of EPTL section 11-2.1(k) leaves an aggrieved income beneficiary without recourse against fiduciaries in breach of their duties. New York has long allowed beneficiaries to recover their losses through actions for removal and surcharge of fiduciaries. See, e.g., In re Van Bokkelen's Estate, 33 N.E.2d 87, 87 (N.Y. 1941); In re Birnbaum, 555 N.Y.S.2d 982, 991 (App. Div. 1990); In re Epstein, 557 N.Y.S.2d 907, 910 (App. Div. 1990); In re Lirakis, 491 N.Y.S.2d 36, 36 (App. Div. 1985); Velez v. Feinstein, 451 N.Y.S.2d 110, 114 (App. Div. 1982).

In accordance with the above, we hold that, under EPTL section 11-2.1, the inventory value of the stock is to be determined as of Mr. de St. Aubin's date of death. Respondent has conceded that, under this interpretation of the law, decedent had no claim under EPTL section 11-2.1(k). Therefore, it is unnecessary to examine petitioners' argument regarding the relationship between EPTL section 11-2.1(k) and 11-2.1(e)(6).

II. Claim for a Share of the Appreciation

Both parties move for summary judgment on the question of whether decedent was entitled to share in the appreciation of the assets held in her husband's estate. To analyze this issue effectively, it is necessary to focus on

the type of bequest, referred to as a "hybrid pecuniary bequest with a floor", that Mr. de St. Aubin directed to be used to fund the marital trust.  A hybrid pecuniary bequest blends the characteristics of a pecuniary bequest and of a fractional bequest.  Estate of Goutmanovitch, 432 N.Y.S.2d 768, 774 (Sur. Ct. 1980); Covey, The Marital Deduction and the Use of Formula Provisions, 99-100 (2d ed. 1978).  A pecuniary bequest is a gift of a sum certain, either stated explicitly in dollars or stated as a formula that can be reduced to a dollar value on the date of the testator's death or on the alternate valuation date (e.g., an amount equal to 50 percent of the adjusted gross estate value). Epping's Trust No. 4 v. Bankers Trust Co., 288 N.Y.S.2d 565, 569 (App. Div. 1968), affd. 246 N.E.2d 753 (1969); Estate of Guterman, 476 N.Y.S.2d 1006, 1008 (Sur. Ct. 1984).  A fractional bequest is a gift of a percentage of the estate, valued on the date of distribution.  Estate of Goutmanovitch, supra at 771; In re Goldsmith, 30 N.Y.S.2d 474, 476 (Sur. Ct. 1941).  Thus, until distribution, the value of a fractional bequest will fluctuate with the value of the estate, whereas the value of a pecuniary bequest is fixed as of the testator's date of death or as of the alternate valuation date.

Under a hybrid pecuniary bequest, as under a pure pecuniary bequest, the dollar value of the bequest is set as of the testator's date of death or the alternative valuation date.  If the executor distributes cash in satisfaction of the bequest, the beneficiary receives the equivalent of a pure pecuniary bequest.  However, if the executor distributes other property, the beneficiary will participate in the appreciation or depreciation of that property.  Estate of Goutmanovitch, supra at 774; Covey, The Marital Deduction and the Use of Formula Provisions, supra at 99-100.

Hybrid pecuniary bequests are used to ensure that the testator's estate recognizes no income tax gain or loss if appreciated or depreciated property is distributed.  This result obtains because the basis of the assets distributed equals the value of the obligation satisfied.  See Estate of Goutmanovitch, supra at 773; Covey, The Marital Deduction and the Use of Formula Provisions, supra at 99-100.

Two methods of funding a hybrid pecuniary bequest are significant in these cases:  The aggregate approach and the fairly representative approach.  Under the aggregate approach, the assets distributed must have an aggregate fair market value at the time of distribution greater than

or equal to the amount of the bequest.  Use of the aggregate approach results in a "hybrid pecuniary bequest with a floor".  Under the fairly representative approach, the assets distributed in satisfaction of the bequest must be fairly representative of appreciation or depreciation in the value of all property available for distribution. Therefore, use of the fairly representative approach effectively transforms a hybrid pecuniary bequest into a fractional bequest.  See Estate of Goutmanovitch, supra at 773; Covey, Marital Deductions and Credit Shelter Dispositions and the Use of Formula Provisions, 90 (1984).

Article Sixth of Mr. de St. Aubin's will establishes decedent's marital trust.  The trust was to be funded with an amount equal to 50 percent of the adjusted gross estate, minus the value of other property passing to Honore under the will or by operation of law.  Article Sixth provides for the selection and valuation of the assets used to fund the marital trust as follows:

> My executors * * * shall have the power and sole discretion to satisfy this bequest wholly or partly in cash or in kind and to select the assets to be included therein, provided, however, that all such assets included shall be valued at the value thereof as finally determined for Federal estate tax purposes, and that the total value of such cash and/or property at the time of distribution to my said trustees shall be at least equal to the amount of this bequest.

Because the bequest is for a sum certain, it constitutes a pecuniary bequest.  Because the will gave the executors discretion to satisfy the bequest in cash or in kind and directed that the aggregate approach be used, it is a hybrid pecuniary bequest with a floor.  The dispute concerns whether other terms of the will, general State fiduciary rules, or the behavior of the executors compels use of the fairly representative approach, contrary to Mr. de St. Aubin's explicit instructions.

Petitioners argue that EPTL section 2-1.9 prohibited the executors from distributing appreciated assets to the marital trust.  They contend that general State fiduciary rules do not overrule that specific provision.  Petitioners further contend that the type of bequest that Mr. de St. Aubin used to fund the marital trust clearly indicates that he intended petitioner to have no claim to any appreciation on the undistributed assets of the estate.  They argue that nothing in his overall estate plan, as determined by a reading of his entire will, dictates a different result. Lastly, they assert that the behavior of the executors has no effect on the legally required method of funding the marital trust.

Respondent argues that petitioners are not entitled to summary judgment on this issue.  First, respondent asserts

that EPTL section 2-1.9 does not apply in this situation, and, therefore, under New York case law, the marital bequest must be funded under the fairly representative approach. Respondent also asserts that Mr. de St. Aubin's executors mishandled his estate and, thus, any discretion that Mr. de St. Aubin granted to his executors was "nullified by the executors' failure to expeditiously and properly administer the estate". The propriety of the executors' actions is a disputed matter of fact.

Respondent next argues that respondent is entitled to summary judgment on this issue. Respondent asserts that Mr. de St. Aubin's will reflects an overriding intent to provide for decedent. Thus, respondent asserts that she was entitled to share in the appreciation of the estate assets. Respondent next argues that the executors' duty of impartiality dictates that decedent be entitled to share in the appreciation of the estate. Finally, respondent contends that, because the actions of the executors violated "the spirit of the marital deduction", decedent's estate is entitled to share in the appreciation of the estate assets.

To better understand the arguments of the parties, it is necessary to review the evolution of New York State

law regarding the attribution of appreciation among competing bequests.

a.  Evolution of New York Law and the Application of EPTL Section 2-1.9

In re Bush's Will, 156 N.Y.S.2d 897 (App. Div. 1956), affd. 145 N.E.2d 872 (N.Y. 1957), established the rule in New York that executors have a duty of impartiality in distributing appreciated assets in satisfaction of competing bequests.  In that case, the decedent bequeathed one half of her adjusted gross estate to her husband and the residuary of the estate in trust for the benefit of her son.  The subject will granted the surviving spouse, who was also executor, authority to use his discretion in making distributions in kind to satisfy the bequests.  Id. at 900.  However, the court decided that the surviving spouse, as executor, had a duty to select impartially the assets to be distributed to each beneficiary.  The court stated:

> The husband of the testatrix is not only a beneficiary under the will but is also executor thereof, and, as such, is acting in a fiduciary capacity as to everyone but himself.  His interest as beneficiary must not be allowed to conflict with his duty as executor.  He may not, in distributing stocks and bonds to himself in satisfaction of his legacy or share, make selections which are favorable to himself and deliver to the trustee

securities which have not enhanced in value in the same proportion as those he receives. * * * The executor must make distribution equitably and fairly as between himself and the trustee of the trust for the son.  [Id. at 900.]

In re Bush's Will spawned a line of cases in which the New York State courts effectively converted hybrid pecuniary bequests into fractional bequests by requiring use of the fairly representative approach.  See In re McDonnell's Will, 263 N.Y.S.2d 653, 656 (Sur. Ct. 1965); In re Leonard's Will, 257 N.Y.S.2d 409, 411 (Sur. Ct. 1965); In re Inman's Estate, 196 N.Y.S.2d 369, 371 (Sur. Ct. 1959).

However, in 1965, the line of cases propagated by In re Bush's Will was vitiated by the enactment of Personal Property Law 17-f, currently EPTL section 2-1.9 (hereinafter collectively referred to as EPTL section 2-1.9).  In EPTL section 2-1.9(b)(2), New York adopted the aggregate approach of funding hybrid pecuniary bequests and implicitly disfavored the fairly representative approach directed by In re Bush's Will.  EPTL section 2-1.9(b)(2) provides:

(b) Unless the instrument expressly provides otherwise:

            *    *    *    *    *    *    *

(2) Where a will or trust agreement authorizes the fiduciary to satisfy wholly or partly in kind a pecuniary disposition or transfer in trust of a pecuniary amount and the instrument requires the fiduciary to value the assets selected by the fiduciary for such distribution as of a date other than the dates of their distribution, the assets selected by the fiduciary for that purpose, together with any cash distributed, <u>shall have an aggregate value on the dates of their distribution amounting to no less than, and to the extent practicable no more than, the amount of such testamentary disposition or transfer in trust</u> as stated in, or determined by the formula stated in, the instrument. [Emphasis added.]

The major impetus for the enactment of EPTL section 2-1.9 was the need to protect unwary New York residents from Rev. Proc. 64-19, 1964-1 C.B. (Part 1) 682, which threatened to deny the marital deduction to certain estates unless the will in question or State law placed a floor on the value of the assets distributed to the spouse. However, EPTL section 2-1.9 also added a ceiling ("to the extent practicable") on the value of the assets distributed, a feature not required by Rev. Proc. 64-19. Implicit in this ceiling is a rejection of the fairly representative approach of <u>In re Bush's Will</u>.

The legislative history of EPTL section 2-1.9 supports this interpretation. Shortly before the enactment of EPTL section 2-1.9, New York set up a commission to analyze its existing estate law and to suggest amendments. Writing as

follows, the commission explicitly recommended rejection of the fairly representative approach and recommended adoption of the aggregate approach.

> The representative rule, it is submitted, runs counter to the testator's intention * * * Under this rule, the executor, in his effort to avoid liquidation of assets, would be required to give the spouse a proportionate share of the entire appreciation, if any, in the estate. This, certainly, was not the testator's purpose when he selected a pecuniary form for the bequest. Had it been so, the fractional formulation would have been the appropriate means to insure that result.
>
>     *   *   *   *   *   *   *
>
> It is recommended that legislation be enacted providing in substance that, in the absence of a contrary provision in the will, where a pecuniary bequest is made for the benefit of the testator's surviving spouse which qualifies for the estate tax marital deduction, and the executor is given discretionary power to distribute assets in kind at their estate tax values, then if such power is exercised the executor must distribute to the spouse assets having an aggregate value on the date of distribution not less than the amount of such pecuniary bequest allowed as a marital deduction. It shall further be the fiduciary's duty, under such circumstances, to endeavor, within reason, not to distribute assets to the spouse worth substantially more than that amount at date of distribution. [Fourth Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates to the Governor and the Legislature (Fourth Report of the Temporary State Commission), N.Y. Legislative Document 1965, No. 19, Report No. 5.4.2A, pp. 326-327; emphasis added.]

Neither respondent nor this Court has located any
case law arising after the effective date of EPTL section
2-1.9 that follows the In re Bush's Will precedent of
requiring the transformation of an aggregate method of
funding into a fairly representative approach.  See In
re McDonnell's Will, supra at 657 (declining to consider
the retroactive implications of EPTL section 2-1.9).

In fact, the case law in this area following the
enactment of EPTL section 2-1.9 clearly rejects the In
re Bush's Will precedent.  Estate of Goutmanovitch, 432
N.Y.S.2d 768 (Sur. Ct. 1980) is the case most factually
similar to the current cases.   In Estate of Goutmanovitch,
the widow of the testator was to receive a hybrid pecuniary
bequest with a floor in an amount equal to one half of the
adjusted gross estate reduced by the aggregate value of any
property passing to her outside of the will.  The court
rejected the assertion that the widow had a claim to a
share of the appreciation of the assets of the estate.  The
court reasoned that EPTL section 2-1.9 "adopted the
aggregate approach, rather than the Bush rule".  Id. at
774.  The court further explained that:

> Under the aggregate approach the fiduciary is
> clearly relieved of the duty of impartiality with
> regard to the distribution of appreciation and is
> authorized, certainly in the case of a simple
> provision for payment at estate tax values, to

pay a pecuniary marital legacy in cash.  [Estate
of Goutmanovitch, supra at 774; emphasis added.]

In Estate of Lasser, N.Y.L.J., Nov. 20, 1987, p.15
(Sur. Ct.), again under circumstances similar to these
cases, the court stated:

> perhaps the most important reason why the * * *
> [In re Bush's Will line of cases] cannot be
> considered as controlling authority here, is
> the fact that the enactment of EPTL 2-1.9 * * *
> represents a legislated rejection of the holdings
> of those cases. * * *
>
>          *   *   *   *   *   *   *
>
>      It cannot be denied that the Legislature
> was fully aware of * * * [In re Bush's Will and
> its progeny] and determined that they should be
> legislatively overruled. * * * Moreover, in
> adopting the "aggregate" as opposed to
> "representative" approach, the Legislature
> obviously determined that the public policy of
> this state did not support the conversion of
> every pecuniary disposition into a fractional
> one.  [Id.]

See also Estate of Guterman, 476 N.Y.S.2d 1006, 1008 (Sur.
Ct. 1984) (allowing, but not requiring, distribution of
appreciation in case of a hybrid pecuniary bequest); Covey,
The Marital Deduction and the Use of Formula Provisions,
105-106.

In some cases, the State surrogate's court has
questioned or rejected the idea that EPTL section

2-1.9(b)(2) imposes a ceiling as well as a floor on a hybrid pecuniary bequest. E.g., Estate of Guterman, supra; Estate of Goutmanovitch, supra. But see Estate of Lasser, supra (honoring the ceiling supplied by EPTL section 2-1.9(k)(2)). However, the question of whether the executors are authorized to distribute appreciated assets is not before this Court. Rather, the issue at hand is whether the executors are required to distribute such assets.

After considering the language of EPTL section 2-1.9, its legislative history, the case law, and the expert commentary on this subject, we hold that New York law directs use of the aggregate approach of funding hybrid pecuniary bequests (unless the will or other governing instrument expressly provides otherwise).

b. Intent

As stated above, the provisions of EPTL section 2-1.9(b)(2) apply "Unless the instrument expressly provides otherwise". EPTL sec. 2-1.9(b). Petitioners argue that Mr. de St. Aubin's intent is clearly consonant with the application of EPTL section 2-1.9. They assert that the choice of a hybrid pecuniary bequest with a floor indicates that he did not wish to obligate the executors to distribute to the marital trust a share of the appreciation of the

estate assets.  Petitioners further point out that use of the fairly representative method of funding would convert the hybrid pecuniary bequest into a fractional bequest, which would conflict with Mr. de St. Aubin's express intent.

Respondent argues that Mr. de St. Aubin's overriding intent, judged from a review of his entire estate plan, was to provide for his widow.  On this basis, respondent contends that, under the circumstances that unfolded, decedent was entitled to share in the appreciation of the estate assets.

In construing any will under New York law, the fundamental rule is to ascertain the intent of the testator from a sympathetic reading of the will in its entirety. In re Kosek's Will, 294 N.E.2d 188, 191 (N.Y. 1973); In re Larkin, 172 N.E.2d 555, 557 (N.Y. 1961); In re Fabbri's Will, 140 N.E.2d 269, 271 (N.Y. 1957).  Such intent is to be gleaned from the four corners of the will.  In re Cord, 449 N.E.2d 402, 404 (N.Y. 1983); In re King, 603 N.Y.S.2d 827, 827 (App. Div. 1993); In re Knapp, 500 N.Y.S.2d 804, 804 (App. Div. 1986).

As explained above, Mr. de St. Aubin created a hybrid pecuniary bequest with a floor to fund the marital trust. Article Sixth of his will provides that "the total value of such cash and/or property [used to fund the Marital Trust]

at the time of distribution to my said trustees shall be at least equal to the amount of this bequest."  Mr. de St. Aubin further provided:  "My Executors, hereinafter named, shall have the power and sole discretion to satisfy this bequest wholly or partly in cash or in kind and to select the assets to be included therein".  Thus, he clearly chose the aggregate approach of funding the marital trust, which is the basis for EPTL section 2-1.9.

We reject respondent's argument that Mr. de St. Aubin's intent to provide for decedent overrides his explicit instructions regarding the funding of the marital trust.  We doubt whether such a general intent, if it did exist, would be sufficient to satisfy the proviso that EPTL section 2-1.9 will be applicable "unless the instrument expressly provides otherwise".  EPTL sec. 2-1.9(b).  In any case, we find that Mr. de St. Aubin's will expresses no intent to require that decedent share in the appreciation of the estate assets.

Mr. de St. Aubin could have chosen to bequeath his entire estate outright to decedent.  He also could have chosen to leave her a fractional bequest.  He did not choose to do so.  Mr. de St. Aubin provided for decedent by making extensive specific bequests to her, which ensured that on his death in 1967, she would receive property with

a value of almost $400,000.  Further, it would be reasonable to assume that Mr. de St. Aubin knew that decedent owned an additional $100,000 of insurance in his life.  He also made her income beneficiary of both the marital trust and the residuary trust.  Finally, he authorized the invasion of the principal of the residuary trust for her benefit.  We find no evidence in the record to challenge the meaning of the explicit language in Mr. de St. Aubin's will.

## C. Alternative Arguments

Respondent argues that the marital trust is entitled to share in the appreciation of the estate assets because, under New York State law, executors have a duty to distribute assets impartially among beneficiaries.  In support of this argument, respondent again cites In re Bush's Will and its progeny.  However, as discussed above, the In re Bush's Will line of cases was vitiated by EPTL section 2-1.9.  See Estate of Goutmanovitch, 432 N.Y.S.2d 768, 774 (Sur. Ct. 1980); Estate of Lasser, N.Y.L.J., Nov. 20, 1987, p. 15 (Sur. Ct.).  That statute was created to overrule the In re Bush's Will line of cases.  See Fourth Report of the Temporary State Commission, N.Y. Legislative Document 1965, No. 19, Report No. 5.4.2A, p. 326 (stating that the In re Bush's Will result,

"certainly, was not the testator's purpose when he selected a pecuniary form for the bequest.  Had it been so, the fractional formulation would have been the appropriate means to insure that result.").

Respondent has presented no evidence that the In re Bush's Will duty impartially to allocate assets survives the imposition of EPTL section 2-1.9 (except where the will by its terms requires impartial allocation).  In fact, the cases explicitly state that the Bush approach has been legislatively overruled.  See Estate of Goutmanovitch, supra at 774 ("This statute adopted the aggregate approach, rather than the Bush rule * * * whenever a pecuniary disposition requires the fiduciary to value the assets distributed as of a date other than the date of distribution"); Estate of Lasser, supra at 15 ("[the] enactment of EPTL 2-1.9 * * * represents a legislative rejection of [Bush]").

It is true, as respondent points out, that the catalyst for the passage of EPTL section 2-1.9 was the desire to protect residents of New York from loss of the marital deduction under Rev. Proc. 64-19, 1964-1 C.B. (Part 1) 682.  However, EPTL section 2-1.9 clearly did more than protect estates from loss of the marital deduction.  We note that EPTL section 2-1.9 applies generally to

"Distributions in kind by executors and trustees" and not only to distributions to spouses.  In addition, EPTL section 2-1.9(b)(2) provides the following ceiling on the value of pecuniary bequests, including hybrid pecuniary bequests:

> the assets selected by the fiduciary for that purpose, together with any cash distributed, shall have an aggregate value on the dates of their distribution amounting to no less than, and to the extent practicable no more than, the amount of such testamentary disposition or transfer in trust as stated in , or determined by the formula stated in, the instrument.

This valuation ceiling is clearly directed at vitiating the In re Bush's Will result.

Before concluding, we briefly address respondent's remaining alternative arguments.  Respondent argues that the marital trust is entitled to share in the appreciation of the estate assets because:  (1) The executors' discretion was "nullified by the executors' failure to expeditiously and properly administer the estate", and (2) the delay in funding the marital trust violated "the spirit of the marital deduction".  Petitioners deny any wrongdoing by the executors.  However, even assuming that the executors did act improperly, respondent has failed to show why the appropriate remedy would be a share of appreciation.  See Estate of Lasser, supra at 15 (refusing

to allocate appreciation where marital trust was not funded for more than 25 years).  As noted above, New York provides other avenues of relief for aggrieved beneficiaries, including actions for removal and surcharge of fiduciaries. See, e.g., In re Van Bokkelen's Estate, 33 N.E.2d 87 (N.Y. 1941); In re Epstein, 557 N.Y.S.2d 907, 910 (App. Div. 1990); In re Birnbaum, 555 N.Y.S.2d 982, 991 (App. Div. 1990); In re Lirakis, 491 N.Y.S.2d 36 (App. Div. 1985); Velez v. Feinstein, 451 N.Y.S.2d 110, 114 (App. Div. 1982).

Given Mr. de St. Aubin's intent and the law of the State of New York, we hold that decedent's estate had no claim to appreciation on the undistributed assets in her husband's estate.

III. Right To Compel Funding of the Marital Trust With Interest at the Legal Rate

Petitioners move for a ruling that "Neither Honore nor the Estate [of Honore] had a claim under EPTL to compel funding of her pecuniary [marital] trust with interest at the legal rate."  Petitioners base their argument on an assertion that EPTL section 11-1.5 is inapplicable to pecuniary legacies in trust.  Petitioners contend that the statute only applies to outright general legacies. Petitioners argue that decedent and her estate were entitled to only the average rate of net income earned by

her husband's estate under EPTL section 11-2.1(d)(2), rather than interest under EPTL section 11-1.5.

Respondent asserts in a trial memorandum that EPTL section 11-1.5 authorized decedent or her estate to maintain an action for payment as a person entitled to a disposition after the expiration of 7 months from the time letters testamentary were granted. Respondent also contends that decedent or her estate was entitled pursuant to this section to interest at the legal rate commencing 7 months after letters testamentary were granted.

The burden on this motion for partial summary judgment is on the movants, petitioners, to show no genuine issues of material fact exist. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

EPTL section 11-1.5 provides in relevant part as follows:

> 11-1.5 Payment of testamentary dispositions or distributive shares.
>
> (a) * * * a personal representative may, but, except as directed by will or court decree or order, shall not be required to, pay any testamentary disposition or distributive share * * * before the expiration of seven months from the time letters testamentary or of administration are granted.
>
>     *    *    *    *    *    *    *
>
> (c) If, after * * * the expiration of seven months from the time letters are granted * * *

the personal representative refuses upon demand to pay a disposition or distributive share, the person entitled thereto may maintain an appropriate action or proceeding against such representative.  * * *

* * * * * * *

(d)  In any action or proceeding to compel payment of a disposition or distributive share, the interest thereon, if any, shall, in the case of a disposition, be at the rate fixed in the will or, if none is so fixed, in any case at the rate of three percent per annum commencing seven months from the time letters testamentary or of administration are granted, unless the delay in payment was unreasonable, in which case interest shall be at the legal rate for the period of such unreasonable delay.

EPTL section 1-2.4 defines a disposition as "a transfer of property by a person during his lifetime or by will."  EPTL section 11-2.1(d)(2) provides as follows:

(d)  Income earned during administration of a decedent's estate.

* * * * * * *

(2)  Unless the will provides otherwise, income from the assets of a decedent's estate after the death of the testator and before distribution, including income from property used to discharge liabilities, shall be determined in accordance with the rules applicable to a trustee under this section and distributed as follows: (A) to specific beneficiaries the net income from the property disposed of to them respectively; (B) to all other beneficiaries, except beneficiaries of pecuniary dispositions not in trust, the balance of the net income in proportion to their respective interests in the undistributed assets of the estate computed at times of distribution

on the basis of inventory value.  [Emphasis added.]

Petitioners contend that only EPTL section 11-2.1, and not EPTL section 11-1.5, applies in our case.  They argue that "Under EPTL 11-1.5, only an <u>outright</u> general legacy is entitled to interest".  In support, they initially cite <u>In re Ahrens' Estate</u>, 196 N.Y.S. 313, 314 (App. Div. 1922), and <u>In re Allen's Will</u>, 165 N.Y.S.2d 614, 617 (Sur. Ct. 1957).

Petitioners' argument fails to account for the fact that <u>In re Ahrens' Estate</u> and <u>In re Allen's Will</u> were decided under a different statute, Surrogate's Court Act (SCA), section 218, the predecessor to EPTL section 11-1.5.  SCA section 218 differs from EPTL section 11-1.5 in a crucial way:  The provision pertained to "legacies", whereas EPTL section 11-1.5 affects "testamentary dispositions".  The court in <u>Ahrens</u> explained that "A 'legacy' referred to in section 218 of the Surrogate's Court Act is distinguishable from a trust fund created by a testator in his will.  The latter does not come within the rule of the statute".  <u>In re Ahrens' Estate</u>, <u>supra</u> at 314.  In <u>Allen</u>, the court cited <u>Ahrens</u> for the proposition that SCA section 218 "applies to legacies and not trust funds." <u>In re Allen's Will</u>, <u>supra</u> at 617.

When recodifying the law in EPTL section 11-1.5, the State legislature amended the provision in a significant way.  The word "legacy" was replaced with the term "testamentary disposition".  EPTL section 1-2.4 defines a "disposition" as a "transfer of property by a person during his life time or by will."  This broad definition clearly encompasses the transfer of assets in trust.  Therefore, on its face, EPTL section 11-1.5 is applicable to the marital trust.  In re Ahrens's Estate and Allen's Will offer no support for petitioners' assertion.

Petitioners next argue that their stance is supported by recent case law stating the rules for pecuniary bequests not in trust.  They cite In re Estate of Zalaznick, 389 N.Y.S.2d 736 (Sur. Ct. 1976); In re Lewine's Estate, 286 N.Y.S.2d 566 (Sur. Ct. 1968); and Estate of McKee, 504 N.Y.S.2d 394 (Sur. Ct. 1986).  We disagree.  McKee restates the rule that all bequests except pecuniary bequests not in trust share in the estate income under EPTL section 11-2.1.  Estate of McKee, supra at 397.  The parties fully agree on that point.  Estate of Zalaznick and Lewine's Estate restate the rule that pecuniary bequests not in trust accrue interest under EPTL section 11-1.5.  In re Estate of Zalaznick, supra at 738; In re Lewine's Estate, supra at 571.  Of this, there is also no dispute.  From these cases,

we glean the rule that pecuniary bequests not in trust are subject solely to EPTL section 11-1.5 and not to EPTL section 11-2.1. These cases do not support a holding that other types of bequests are subject only to EPTL section 11-2.1 and not to EPTL section 11-1.5. None of these cases gives any indication why the revisers of the New York estate law broadened the interest provision, EPTL section 11-1.5, to be applicable to all "testamentary dispositions" if they did not intend for it to apply to pecuniary dispositions in trust.

Petitioners contend next that expansive application of EPTL section 11-1.5 would lead to an absurd result. All bequests except pecuniary bequests not in trust would receive both income and interest. Pecuniary bequests not in trust would receive only interest. Petitioners assert that this "double recovery" for every bequest except pecuniary bequests not in trust makes no sense. Further, interest would accrue on residuary gifts, which may themselves be the source of some interest payments. However, petitioners again fail to explain why the legislature chose to expand the language of the interest provision to make EPTL section 11-1.5 applicable to all "testamentary dispositions". We note here that respondent has suggested the theory that the interest provision in

EPTL section 11-1.5 acts as a floor on the income to be received by beneficiaries such as decedent. While it is not presently clear that respondent is correct, such a formulation would eliminate the double recovery issue raised by petitioners.

Petitioners note that the commentary in this area states that pecuniary dispositions in trust receive income, whereas pecuniary dispositions not in trust receive interest. See, e.g., Covey, Marital Deduction and Credit Shelter Dispositions and the Use of Formula Provisions, 61-66 (1984). However, the statements offered by the commentators are merely conclusory. These sources offer no additional support for petitioners' argument.

Finally, petitioners assert that, even if EPTL section 11-1.5 were applicable to all testamentary dispositions, decedent would be ineligible to receive interest under that statute. They argue that she was coexecutor of her husband's estate and at least acquiesced to the actions of her son in administering the estate. Therefore, they argue, she was at least partially responsible for the delay in funding of the trust. Petitioners assert that, under New York law, this involvement by Mrs. de St. Aubin would make her ineligible for an interest award. New York law clearly states the contrary. The New York Court of

Appeals, the highest court in that State, squarely addressed this issue in In re Estate of Crea, 266 N.E.2d 815 (N.Y. 1971). In that case, the court affirmed the reversal of the trial court's ruling that a coexecutor-beneficiary was not entitled to interest on her bequest under SCA section 218 because of her status as coexecutor. The court reasoned as follows:

> Appellant also urges that she is entitled to interest on her cash legacy because it was not paid until nearly three years after letters testamentary were issued. The Surrogate denied interest on the ground that appellant, as coexecutor, was equally at fault with her brother for the delay in paying the bequest. The Appellate Division, however, modified the decree holding that under section 218 of the Surrogate's Court Act appellant was entitled to interest at the rate of 3% per annum. We agree. Though section 218 vested the Surrogate with the discretion to determine the reasonableness of the delay as a factor in considering whether or not the legatee was entitled to 6% interest, the statute specifically provided for the imposition of 3% interest where the legacy is not paid seven months from the issuance of letters testamentary. Thus, it was entirely proper for the Appellate Division to allow 3% interest * * * [Id. at 817-818.]

In re Estate of Zalaznick, 389 N.Y.S.2d 736, 738 (Sur. Ct. 1976) (citing Crea in holding that the same result obtains under EPTL section 11-1.5).

Petitioners have presented insufficient support to convince this Court that EPTL section 11-1.5 does not apply to pecuniary bequests in trust. In addition, if EPTL

section 11-1.5 does apply in these cases, the question of whether the marital trust is entitled to interest at 3 percent or at the legal rate depends on the reasonableness of the delay in funding.  That is a material issue of fact.

Therefore, petitioners' motion for partial summary judgment will be denied with respect to this issue.

<u>An order will be issued granting in part and denying in part petitioner's motion for partial summary judgment, and denying respondent's cross-motion for partial summary judgment</u>.