*341 Scileppi, J.
We are called upon to determine whether certain transactions between testator and his son resulted in and remained an enforceable obligation which should have been included as an asset of the testator’s estate.
On August 4, 1963 James H. Crea died testate leaving a will dated July 20, 1962 which has been duly probated and in which he bequeathed $20,000 to his daughter, the appellant, and gave certain engineering and contracting equipment to his son, James T. Crea, respondent herein. Both were also made residuary legatees[1] and coexecutors of the estate.
Turning to the particular transactions in question, it appears that in 1954 and 1955, respondent and his wife constructed a residence on certain vacant property which they had previously acquired. Labor, materials and money for this building were furnished by the Crea Construction Company, a partnership comprised of testator and his wife (who predeceased him). Appellant alleges that, as a result of this construction, respondent became indebted to his father in the sum of $19,290.70, an obligation which he has refused to pay.
Thereafter, in 1955, respondent surrendered to his parents his document of title[2] to the aforesaid property so as to allow them to effectuate a sale to secure revenue needed for the operation of the construction business. Testator in exchange gave his son a receipt in his own handwriting which read as follows:
*342 November 17, 1955
We have this day received from Jas. T. and Norma L. Crea Deed, Title Search and Survey as payment in full for money due on house and property at No. 8 Kirkwood Drive, Grand Island, Erie County, New York.
Signed,
Crea Construction
By: J. T. Crea
Ella P. Crea
In our opinion, this receipt in no way extinguished the debt since when no sale was effectuated, the documents were returned to respondent who thereafter orally agreed to pay testator installments of $75 (later raised to $90) per month for the rest of testator’s life on the aforesaid obligation. Pursuant to this agreement respondent made payments until shortly after the death of testator. It is significant, however, that these monthly payments appear to have been treated by the testator as interest since the full sum of $19,290.70 was carried on the books of the Crea Company as an account receivable until 1963. Moreover, the record reveals that respondent, acting in his capacity as executor also treated the debt as an asset of the estate and paid Federal and State estate taxes on that asset. When respondent filed his petition for a judicial settlement of his accounts, he failed to list the $19,290.70 obligation as an asset of the estate and appellant thereupon filed her objections. Appellant argues that the transactions between respondent and testator for building materials resulted in and remained an enforceable obligation which should have been included by respondent as an asset of the estate.
The courts below employed different rationales in their rejection of appellant’s claim. The Surrogate, holding that the alleged debt was not an asset of the estate, wrote that: ‘ ‘ Inasmuch as there was never any writing or memorandum evidencing a debt, and also that there was never any demand made, the evidence is insufficient to prove that the amount in question constituted an enforceable debt owing from the son to the decedent. Section 31, Personal Property Law [Statute of Frauds].” We are unable to see how that particular section of the Statute of Frauds applied to the transactions in question. Certainly, the *343 debt could have been paid within one year and there is no indication in the record that this was a contract to make a testamentary disposition. Moreover, contrary to the view of the Surrogate, there was testimonial evidence and as we have indicated documentary evidence (i.e., the books of the Crea Company and tax returns) which strongly tend to establish her claim.
Although on appeal the Appellate Division reached the same result as the Surrogate, it took the view that the transaction between father and son was a sale of goods and reasoned that the complete delivery and acceptance of the materials supplied took the transaction out of what it considered the applicable Statute of Frauds (to wit, Personal Property Law, former § 85 [Sale of Goods]). It concluded, however, that the subsequent oral agreement for monthly payments was a modification of the contract which effectively terminated respondent’s liability on the death of the testator (33 A D 2d 887). While we agree that the transfer of building materials was a sale of goods and that delivery and acceptance took it out of the Statute of Frauds, we cannot accept the conclusion of the Appellate Division that the subsequent oral modification was effective to defeat appellant’s claim. Problems of the Statute of Frauds aside, that oral modification was invalid because it was not supported by consideration[3] required by former section 33 (subd. 2) of the Personal Property Law (now General Obligations Law, § 5-1103) which provided that: “§ 33. Validity of certain agreements made without consideration. * * * 2. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent. ” It is apparent that the courts below seem to have been influenced by the notion that the outright cash bequest to appellant was intended *344 to place her on a parity with her brother who had received nearly $20,000 worth of building equipment and materials during their father’s life. While we agree that this consideration might defeat appellant’s moral right to her share as residuary legatee, we are constrained by former section 33 (subd. 2) of the Personal Property Law to hold that the $19,290.70 debt was an enforceable obligation which should have been included as an asset of the estate.
Appellant also urges that she is entitled to interest on her cash legacy because it was not paid until nearly three years after letters testamentary were issued. The Surrogate denied interest on the ground that appellant, as coexecutor, was equally at fault with her brother for the delay in paying the bequest. The Appellate Division, however, modified the decree holding that under section 218 of the Surrogate’s Court Act appellant was entitled to interest at the rate of 3% per annum. We agree. Though section 218 vested the Surrogate with the discretion to determine the reasonableness of the delay as a factor in considering whether or not the legatee was entitled to 6% interest, the statute specifically provided for the imposition of 3% interest where the legacy is not paid seven months from the issuance of letters testamentary. Thus, it was entirely proper for the Appellate Division to allow 3% interest from March 15, 1964 (seven months from the issuance of letters) to December 19, 1966, the date when the legacy was paid (see Matter of Hallock, 308 N. Y. 299).
Accordingly, the order appealed from should be reversed, without costs and the matter remanded to the Surrogate’s Court for the inclusion of respondent’s $19,290.70 obligation as an asset of the estate.

. The will further provided that respondent’s residuary share should include the engineering and contracting equipment bequeathed to him.

. These were original documents. No new deed was executed and neither testator nor his wife took title to the property.

. Of course, we would reach a different result if the transactions in this case had occurred after September 27, 1964, since under section 2-209 (subd. [1]) of the Uniform Commercial Code an oral modification of a contract for the sale of goods no longer needs consideration.