[968 NE2d 947, 945 NYS2d 593]

Daniel Ryan, Respondent, v Kellogg Partners Institutional Services, Appellant.

Argued February 7, 2012; decided March 27, 2012

2

## POINTS OF COUNSEL

*Peckar & Abramson, P.C.*, New York City (*Kevin J. O'Connor* of counsel), for appellant. I. Daniel Ryan's breach of contract claim should never have gone to the jury because of the existence of the signed employment application and employee handbook, his admission that his bonus compensation was discretionary, and because of overwhelming evidence that no such verbal agreement existed. (*Smalley v Dreyfus Corp.*, 40 AD3d 99; *Hall v United Parcel Serv. of Am.*, 76 NY2d 27; *Kaplan v Capital Co. of Am.*, 298 AD2d 110, 99 NY2d 510; *Hunter v Deutsche Bank AG, N.Y. Branch*, 56 AD3d 274; *Namad v Salomon Inc.*, 74 NY2d 751; *Truelove v Northeast Capital &*

*Advisory*, 268 AD2d 648, 95 NY2d 220; *Gruber v J.W.E. Silk, Inc.*, 52 AD3d 339; *Weiner v Diebold Group*, 173 AD2d 166.) II. Daniel Ryan's testimony concerning the alleged oral promise by Kellogg Partners Institutional Services to pay him additional bonus compensation made clear that it was supported by past consideration and was unenforceable at law; the submission of this claim to the jury, as well as the use of a patently objectionable jury charge, was reversible error. (*James V. Aquavella, M.D., P.C. v Viola*, 17 NY3d 741; *Clark v Bank of N.Y.*, 185 AD2d 138, 81 NY2d 760; *Transamerica Realty v Winokur*, 248 AD2d 250; *Raymond Babtkis Assoc. v Tarazi Realty Corp.*, 36 AD2d 694; *Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584; *Umscheid v Simnacher*, 106 AD2d 380; *Rehill v Rehill*, 306 NY 126; *Kastil v Carro*, 145 AD2d 388; *Matter of Crea*, 27 NY2d 339; *20 E. 74th St. v Minskoff*, 308 NY 407.) III. Under the very terms of Daniel Ryan's alleged oral agreement, as purportedly "amended," it is barred by General Obligations Law § 5-701 because it could not be performed within one year. (*Mirchel v RMJ Sec. Corp.*, 205 AD2d 388; *Weisse v Engelhard Mins. & Chems. Corp.*, 571 F2d 117.) IV. The trial court's decision to permit Daniel Ryan to hold himself out as the poster child of financial health, while simultaneously limiting Kellogg Partners Institutional Services' ability to challenge that testimony, left the jury with a false picture and resulted in a manifestly unjust decision. (*Gropper v St. Luke's Hosp. Ctr.*, 234 AD2d 171; *Kaplan v Capital Co. of Am.*, 298 AD2d 110; *Namad v Salomon Inc.*, 74 NY2d 751; *Crooms v Sauer Bros. Inc.*, 48 AD3d 380.) V. Daniel Ryan's cross motion for attorney's fees pursuant to Labor Law § 198 was completely without basis under the law and should have been denied. (*Truelove v Northeast Capital & Advisory*, 95 NY2d 220; *Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609; *Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457; *Hunter v Deutsche Bank AG, N.Y. Branch*, 56 AD3d 274.)

*Law Offices of Thomas S. Rosenthal*, New York City (*Thomas S. Rosenthal* of counsel), for respondent. I. The evidence fully supports the jury's verdict that Kellogg Partners Institutional Services breached its contract with Daniel Ryan. (*Szczerbiak v Pilat*, 90 NY2d 553; *Cohen v Hallmark Cards*, 45 NY2d 493; *Blum v Fresh Grown Preserve Corp.*, 292 NY 241.) II. No provision in Kellogg Partners Institutional Services' application or handbook operates by law to bar Daniel Ryan's claim for his guaranteed, non-discretionary bonus or otherwise subjects that bonus to Kellogg's discretion. (*Murphy v American Home Prods.*

*Corp.*, 58 NY2d 293; *Sabetay v Sterling Drug*, 69 NY2d 329; *Cron v Hargro Fabrics*, 91 NY2d 362; *Weiner v Diebold Group*, 173 AD2d 166; *Gruber v J.W.E. Silk, Inc.*, 52 AD3d 339; *Mirchel v RMJ Sec. Corp.*, 205 AD2d 388; *Vetromile v JPI Partners, LLC*, 706 F Supp 2d 442; *Guggenheimer v Bernstein Litowitz Berger & Grossmann LLP*, 11 Misc 3d 926; *Cohen v Lord, Day & Lord*, 75 NY2d 95; *Smalley v Dreyfus Corp.*, 40 AD3d 99.) III. No provision of the General Obligations Law applies to bar Daniel Ryan's claim for breach of contract. (*23/23 Communications Corp. v General Motors Corp.*, 257 AD2d 367, 93 NY2d 805; *Matter of Sheldon E. Goldstein, P.C. [Riverso]*, 276 AD2d 321; *Miranco Contr., Inc. v Perel*, 29 AD3d 873; *Admae Enters. v Smith*, 222 AD2d 471; *Kuhl v Piatelli*, 31 AD3d 1038; *Rogoff v San Juan Racing Assn.*, 54 NY2d 883; *Immediate v St. John's Queens Hosp.*, 48 NY2d 671; *Cron v Hargro Fabrics*, 91 NY2d 362; *Weiner v Diebold Group*, 173 AD2d 166; *Umscheid v Simnacher*, 106 AD2d 380.) IV. The trial court's evidentiary rulings do not warrant a remand for a new trial. (*Porter v Saar*, 260 AD2d 165; *Campbell v Rogers & Wells*, 218 AD2d 576; *People v Dillenbeck*, 115 AD2d 331; *Coopersmith v Gold*, 89 NY2d 957; *Crooms v Sauer Bros. Inc.*, 48 AD3d 380; *Kaplan v Capital Co. of Am.*, 298 AD2d 110; *Namad v Salomon Inc.*, 74 NY2d 751; *Gropper v St. Luke's Hosp. Ctr.*, 234 AD2d 171.) V. The jury's finding that Kellogg Partners Institutional Services breached the contract to pay Daniel Ryan $175,000 warrants the court's judgment that Mr. Ryan is entitled to the award of attorney's fees because Kellogg violated article 6 of the Labor Law. (*Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609; *Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494; *Miteva v Third Point Mgt. Co., L.L.C.*, 323 F Supp 2d 573; *Wright v Wright Stucco*, 50 NY2d 837; *Tierney v Capricorn Invs.*, 189 AD2d 629; *Watson v Prentice-Hall*, 50 AD2d 1077; *Truelove v Northeast Capital & Advisory*, 268 AD2d 648.)

## OPINION OF THE COURT

READ, J.

In early 2003, plaintiff Daniel Ryan was approached about leaving his employment with the brokerage firm where he had worked since 2000 to join Kellogg Partners Institutional Services LLC (Kellogg), a broker-dealer then being formed to trade stocks for institutional investors. In 2002, Ryan earned roughly $270,000, consisting of salary and a bonus for work performed in 2001, paid out in February 2002; for the first six months of

2003, he earned approximately $195,000 in salary and a bonus for work performed in 2002, paid out in February 2003. Ryan testified that he told Kellogg's managing partner that he "wanted a package of $350,000" to change jobs. According to Ryan, the managing partner assured him this "would not be a problem," but asked him if he would accept his compensation for calendar year 2003 split into two parts, consisting of a salary of $175,000 and a guaranteed bonus of $175,000, which would be paid out in late 2003 or early 2004. Ryan agreed, and began work at Kellogg on July 14, 2003 as head floor broker.

On June 21, 2003, before starting his employment at Kellogg but after he accepted the job, Ryan signed an employment application. A section captioned "Acknowledgments" declares as follows:

> "I understand that [Kellogg Group LLC[1]] and I fully expect that I shall have a successful career with the firm, but I further understand that is [sic] neither an offer of employment nor employment itself, nor any of [Kellogg Group LLC's] policies or procedures, carry any guarantee of employment for any length of time and that my employment, compensation and benefits are at will and can be terminated, with or without cause or notice, at any time, at the option of [Kellogg Group LLC] or myself."

Similarly, Kellogg Group LLC's employee handbook includes a "Receipt" signed by Ryan on February 18, 2004, which states that

> "I understand that Kellogg Group LLC is an 'at will' employer and as such[,] employment with Kellogg Group LLC is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, and without prior notice. No supervisor or other representative of the company (except the President) has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the above. In addition, I understand that this Handbook states Kellogg Group LLC's policies and practices in effect on the date of publication. I understand that nothing contained in the Handbook

---

1. Kellogg is (or was at the time) a subsidiary of Kellogg Group LLC.

may be construed as creating a promise of future benefits or a binding contract with Kellogg Group LLC for benefits or for any other purpose."

Kellogg did not begin trading operations on the floor of the New York Stock Exchange until October 2003. Ryan received an extra two weeks' pay in late 2003, but no other bonus payment was forthcoming.[2] According to Ryan, he and the managing partner had "a few conversations" about this. Then in February 2004, the managing partner asked Ryan if he would be willing to forgo the agreed-upon bonus for a year, and accept it for work performed in 2004 instead, to be paid out in late 2004 or early 2005. The managing partner gave as his reason that Kellogg had started up "a little bit later" than anticipated. Ryan replied that he "wasn't very happy about it," but would "take one for the team and take the guarantee for the 2004 year instead of 2003." At the time, business at Kellogg was "steadily improving, picking up new accounts."

Ryan claims to have discussed with the managing partner "many times" in late 2004 and early 2005 that he was "waiting for [his] bonus." The managing partner put him off, telling him to "[r]elax" and reassuring him that Kellogg was "going to get [to] the bonuses soon." Then, on February 3, 2005, the managing partner offered Ryan a $20,000 bonus for work performed in 2004. Ryan rejected this overture as unacceptable. Five days later, on February 8, 2005, the managing partner fired Ryan at a meeting also attended by the chief compliance officer. Ryan was handed a separation agreement, which provided for a payment to him of $20,000 and included a release of Kellogg from any and all claims or causes of action. Ryan refused to sign this document.

On March 9, 2005, Kellogg filed a Uniform Termination Notice for Securities Industry Registration (Form U-5) with the National Association of Securities Dealers, Inc. (NASD), indicating that Ryan's employment had been terminated for cause; namely, insubordination and disparagement of Kellogg.[3] The managing partner testified that he learned before February 8,

---

**2.** The managing partner testified that Ryan received a bonus of $10,000 for work performed in 2003, but Ryan's W-2 forms did not support this.

**3.** Within 30 days after termination of an associated person's registration for any reason, a securities firm must file a Form U-5 with the Financial Industry Regulatory Authority, Inc. (FINRA [NASD's successor, as of July 26, 2007]), and at the same time provide a copy to the former employee (*see Financial Indus. Regulatory Auth., Inc. v Fiero*, 10 NY3d 12, 14 n [2008];

(n. cont'd)

2005 that Ryan had made derogatory comments about him and the firm subsequent to February 3, 2005, but chose not to mention this at the termination meeting. Instead, he "spoke about the importance of chemistry in the firm and how [he] did not feel that [his] vision of what the firm was all about and where it was going was consistent with [Ryan's] vision."

Ryan testified that he was "shocked" when he learned the day after he was fired that he was being accused of badmouthing Kellogg. While the managing partner and the chief compliance officer urged him to sign the separation agreement so as to avoid the filing of a negative U-5 form, Ryan declined because $20,000 "was a fraction of what [he] was owed," and he did not think it "fair[ ] that [he] was being pressured to sign something so [Kellogg] wouldn't put something false" on the form. For his part, the managing partner countered that he just "wanted to give [Ryan] the opportunity to resign" rather than "have on his record that he was terminated."

In a complaint filed May 26, 2005, Ryan alleged, as relevant to this appeal, causes of action for failure to pay wages in violation of Labor Law §§ 190 through 198 and breach of contract. Supreme Court conducted a jury trial in the spring of 2009, at which the managing partner in every conceivable way contradicted Ryan's testimony on the topic of bonuses; in particular, he told the jury that the subject simply "did not come up" during the course of bringing Ryan on board at Kellogg, and that bonuses were discretionary only. The judge submitted Ryan's Labor Law and contract claims to the jury, which unanimously found that Kellogg had breached an oral agreement to pay Ryan a guaranteed bonus of $175,000, and, by a 5-1 vote, that Kellogg had not willfully withheld this payment.

Kellogg moved for judgment notwithstanding the verdict or for a new trial on numerous grounds, and Ryan cross-moved for various kinds of relief, principally a judgment notwithstanding the verdict on his claim for willful violation of the Labor Law and attorney's fees pursuant to Labor Law § 198 (1-a). Kellogg challenged whether Ryan had adduced sufficient proof that the firm agreed to pay him a non-discretionary bonus, and, alternatively, claimed that the alleged oral agreement was

FINRA Manual, Bylaws, art V, § 3 [a] [formerly NASD Manual, Bylaws, art V, § 3 (a)]).

unenforceable anyway in light of sections 5-701 (a) (1),[4] 5-1103[5] and 5-1105[6] of the General Obligations Law.

Supreme Court concluded that there was an enforceable oral agreement in light of Ryan's testimony, which was "accepted by the jury" (2010 NY Slip Op 33771[U], *10). As an initial matter, the judge decided that Kellogg had waived reliance upon any provisions of the General Obligations Law by failing to plead them as affirmative defenses in its answer. But in any event, she noted, Ryan testified "that the non-discretionary bonus was in consideration of his agreement to work for Kellogg for the remainder of 2003," and "that Kellogg's agreement to pay him the non-discretionary bonus in 2004 was in consideration for his agreement to work at Kellogg throughout 2004." As a result, "the consideration was contemporaneous and forward looking," and "[t]he oral agreement . . . was not supported solely by past consideration, thus the failure to reduce the agreement to a writing did not violate [General Obligations Law] § 5-1105 as a matter of law." (*Id.*)

Additionally, Supreme Court held there was no violation of General Obligations Law § 5-701 (a) (1) because both Kellogg's original agreement to pay Ryan a non-discretionary bonus in 2003 and the later agreement to pay him the bonus in 2004 were capable of being performed in a year's time. And because Ryan testified that the agreement to pay him the bonus in 2004 was supported by "separate and new consideration, *i.e.*, Ryan's agreement to work at Kellogg through 2004," it was "not merely a modification of Kellogg's 2003 agreement to pay Ryan a non-discretionary bonus, and in these circumstances [General Obligations Law] § 5-1103 [was] not controlling" (*id.* at *11 n 5).

---

**4.** Section 5-701 (a) (1) of the General Obligations Law, captioned "Agreements required to be in writing," provides that an agreement will not be recognized or enforceable if it is not in a writing signed by the party sought to be bound when "[b]y its terms [the agreement] is not to be performed within one year from the making thereof."

**5.** Section 5-1103 of the General Obligations Law, captioned "Written agreement for modification or discharge," states that an agreement to modify or discharge an obligation does not require consideration if expressed in a writing signed by the party to whom the obligation is owing.

**6.** Section 5-1105, captioned "Written promise expressing past consideration," provides that a promise based on past consideration is enforceable if there is a writing signed by the party to be bound, and "the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."

Supreme Court also denied both parties' motions with respect to declaring the jury verdict against the weight of the evidence. First, "[t]he jury was absolutely entitled to believe Ryan's testimony and disbelieve [the managing partner's] testimony concerning whether the agreement was made and breached" (*id.* at *12). Further, "viewed in the light most favorable to Kellogg, the jury . . . was entitled to determine that Kellogg's refusal to pay Ryan the bonus was based on [its] belief that no bonus was due, and . . . not based on malice or ill will toward Ryan" (*id.* at *13).

Next, the judge rejected Kellogg's contention that Ryan's "acceptance" of the employee handbook and knowledge of the course of dealing in the industry proved that he must have known that any bonus promised by the managing partner was necessarily optional (*id.*). Supreme Court pointed out that the parties "sharply disputed" the general course of dealing in the industry, especially with respect to bonus offers made to induce sought-after prospects[7] in the financial services industry to change jobs, as well as the date when Ryan was actually given the handbook, and that, in any event, "there was no showing that either party relied upon the handbook's provisions" (*id.* at *13, *14). As a result, in the judge's view the jury could have rationally relied upon Ryan's testimony.

Finally, the judge decided that Ryan was entitled to reasonable attorney's fees pursuant to Labor Law § 198 (1-a) because "[w]ith the jury's verdict, [he] . . . prevailed on his unpaid wages claim" (*id.* at *19).[8] By judgment entered February 24, 2010, Supreme Court awarded Ryan the total sum of $379,956.65, consisting of the $175,000 awarded by the jury, statutory interest, attorney's fees in an amount stipulated by the parties and costs.

The Appellate Division affirmed, with two Justices dissenting (79 AD3d 447 [1st Dept 2010]). The court essentially adopted

7. The managing partner readily acknowledged that he considered "north of" 100 candidates for the job he offered Ryan.

8. Under former Labor Law § 198 (1-a), an employee who prevailed on a wage claim was entitled to recover "reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage . . . was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due." The law was amended in 2009 to shift the burden to the employer to "prove[ ] a good faith basis to believe that its underpayment of wages was in compliance with the law" in order to avoid liquidated damages (*see* L 2009, ch 372, § 1); and in 2010, liquidated damages were increased from 25% to 100% of the total amount of wages found to be due (*see* L 2010, ch 564, § 7).

the trial court's reasoning, commenting, in particular, that Ryan's breach-of-contract claim was not barred by the handbook or employment application because "[t]hose documents did not clearly indicate that bonuses [were] discretionary, and whether the $175,000 payment was intended to be a discretionary bonus or earned income was a factual question for determination by the jury" (*id.* at 448 [citations omitted]). The dissenters would have reversed and dismissed the complaint "on the ground that [Ryan's] breach of contract claim [was] barred by the employment application he signed and the employee handbook" (*id.* at 449 [Friedman and McGuire, JJ., dissenting]). Kellogg appeals as of right by virtue of the two-Justice dissent, and we now affirm.

The parties agree that Ryan worked at Kellogg as an at-will employee with an annual base salary of $175,000; they also agree that Ryan and the managing partner reached an oral agreement about how much Ryan would be paid in 2003 if he joined Kellogg—i.e., there was no writing memorializing Ryan's bargained-for compensation. Ryan testified that he accepted Kellogg's job offer before he filled out the employment application on June 21, 2003, and that he gave his then employer two weeks' notice; he started work at Kellogg on July 14, 2003. Concomitantly, the managing partner testified that he extended the job offer to Ryan in late May or mid-June. What is contested is whether, as a matter of fact, this job offer included a guarantee to pay Ryan a non-discretionary bonus of $175,000 in late 2003 or early 2004 in order to attract him from an established securities firm to Kellogg, a start-up venture at the time; and whether the managing partner in early 2004 asked for and received Ryan's consent to delay this bonus payment for a year until late 2004 or early 2005 on the understanding that Ryan would remain at Kellogg through 2004. Ryan testified that this is what happened; the managing partner claimed that Ryan was making it all up.

The jurors clearly believed Ryan. Kellogg now pursues two principal lines of argument to convince us that we should nevertheless reverse the Appellate Division's order and dismiss the complaint or, alternatively, order a new trial: first, that there was insufficient evidence to support the jury's verdict because statements in the employment application and employee handbook negate Ryan's alleged expectation of or entitlement to a guaranteed or non-discretionary bonus; second, that the oral agreements respecting the bonus, if, in fact, entered into by the

parties (which Kellogg strenuously denies), are unenforceable because the General Obligations Law mandates that any such agreements would have to have been reduced to a writing by an agent of Kellogg in order to be valid. Kellogg also disputes Ryan's right to attorney's fees pursuant to Labor Law § 198 (1-a).

The "Acknowledgments" section of the application, signed by Ryan on June 21, 2003, confirms his understanding that he was going to work at Kellogg as an at-will employee—i.e., that he was not guaranteed employment for any period of time, and that his employment, compensation and benefits were subject to termination by either party at any time and for any reason or for no reason at all. But in this lawsuit, Ryan does not assert or rely on any alleged right to continued employment, compensation or benefits from Kellogg; rather, he asks to be paid the compensation that he says he was promised by Kellogg at the outset of his employment in 2003, and again in early 2004, in exchange for work that he thereafter performed in reliance on these promises. Nothing in the application allows Kellogg to escape paying an at-will employee such as Ryan the remuneration he claims to have earned before he was fired.

Similarly, the "Receipt" in the employee handbook, signed by Ryan on February 18, 2004, only confirms his understanding that he was an at-will employee; specifically, Ryan acknowledged that his employment at Kellogg Group LLC was not for a fixed term or specified period of time and might be "terminated at the will of either party, with or without cause, and without prior notice" unless Kellogg Group LLC's president agreed otherwise. The "Receipt" also recited that Ryan understood that nothing in the handbook "creat[ed] a promise of future benefits or a binding contract . . . for benefits or for any other purpose." The handbook does not say that oral compensation agreements are unenforceable, or mention bonuses at all,[9] although there is no dispute that Kellogg awarded annual bonuses. In short, there are no statements in the handbook that bar Ryan's recovery on his breach-of-contract and Labor Law claims for compensation alleged to be due and owing him (cf. *Namad v Salomon Inc.*, 74 NY2d 751 [1989] [where written four-year employment contract unambiguously vested employer with discretion regarding amount of bonus compensation to be awarded, employer entitled

---

**9.** There is a section in the handbook captioned "Compensation," which addresses only annual performance reviews, the payment of salaries on a biweekly basis, the manner of distribution of paychecks and time records.

to summary judgment dismissing employee's breach-of-contract suit seeking additional bonus payments]; *Hall v United Parcel Serv. of Am.*, 76 NY2d 27 [1990] [employee not entitled to bonus where he did not receive annual participation notice, a precondition to vesting of bonus payment under employer's written bonus plan]; *Tierney v Capricorn Invs.*, 189 AD2d 629 [1st Dept 1993], *lv denied* 81 NY2d 710 [1993] [employee may not recover compensation over and above what was specified in written three-year employment contract where he signed acknowledgment that agreement stated parties' entire understanding and could only be amended by signed writing]; *Smalley v Dreyfus Corp.*, 40 AD3d 99, 106 [1st Dept 2007], *revd on other grounds* 10 NY3d 55 [2008] [employee not entitled to bonus where language in employee handbook authorized specified managers to "modify or annul any individual award, at their sole discretion, with or without notice, at any time"]; *Hunter v Deutsche Bank AG, N.Y. Branch*, 56 AD3d 274 [1st Dept 2008] [plaintiffs' breach-of-contract claims lacked merit where unambiguous language of their employment contracts and employee handbook made bonus awards solely and completely matter of employer's discretion]). In any event, here the employee handbook specifically disavows any intention on Kellogg's part to have its provisions integrated into the employment contract (*cf. Kaplan v Capital Co. of Am.*, 298 AD2d 110 [1st Dept 2002], *lv denied* 99 NY2d 510 [2003] [employee handbook, which stated that bonus compensation was purely discretionary, specified that handbook's terms alone would govern employment relationship unless modified in writing by specified individuals]).

Moreover, the jury heard differing accounts as to whether Ryan was even presented with an employee handbook before February 18, 2004, which is after the oral agreements were alleged to have been struck, or what any earlier-received handbook might have said. The chief compliance officer, who headed up human resources at the time Ryan was hired, testified that he customarily gave copies of the employee handbook to new hires. Ryan, however, denied receiving an employee handbook when he started at Kellogg in July 2003. The chief compliance officer also stated that he revised the handbook at some time after July 2003 and before February 2004, and that "[o]ff the top of [his] head" he did not recall what revisions he may have made in addition to changing the references to the firm to reflect its new name. Kellogg did not introduce a circa 2003 version of the handbook into evidence.

■ Next, assuming Kellogg did not waive any defenses to Ryan's breach-of-contract and Labor Law claims, the statutory provisions it adduces specify that certain kinds of agreements must be expressed in a signed writing in order to bind the party against whom enforcement is sought—i.e., agreements incapable of being performed within a year of their making (General Obligations Law § 5-701 [a] [1]; *see Cron v Hargro Fabrics*, 91 NY2d 362, 366 [1998] ["As long as (an) agreement may be fairly and reasonably interpreted such that it may be performed within a year (of its making), the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame" (internal quotation marks omitted)]); agreements made without consideration to change, modify or discharge an existing contract or obligation (General Obligations Law § 5-1103); and agreements premised on past consideration (General Obligations Law § 5-1105). The oral agreements described by Ryan to the jury, though, do not fit into any of these categories; therefore, Kellogg may not successfully defend against their enforcement on the ground there was no signed writing.

Ryan testified that he left his well-paying job at another securities firm to join Kellogg in reliance upon the managing partner's promise that his compensation package for 2003 would consist of a base salary of $175,000 and a guaranteed, non-discretionary bonus of $175,000 to be paid to him in late 2003 or early 2004. There was clearly, then, consideration for this oral employment contract, which was capable of being performed within a year. But even if Ryan had been unemployed when Kellogg hired him, his subsequent performance would have constituted consideration (*see Grossman v Schenker*, 206 NY 466, 468 [1912] ["Even when the obligation of a unilateral promise is suspended for want of mutuality at its inception, still, upon performance by the promisee a consideration arises 'which relates back to the making of the promise, and it becomes obligatory' " (quoting *Willetts v Sun Mut. Ins. Co.*, 45 NY 45, 47 [1871])]). As a result, General Obligations Law § 5-701 (a) (1) and § 5-1105 are not implicated.

Ryan also testified that in early 2004, the managing partner sought his consent to delay the payment of his already-earned bonus until late 2004 or early 2005 upon the understanding that Ryan would stay on at Kellogg through the end of 2004. This oral agreement was likewise supported by consideration on Ryan's part and capable of being performed within a year;

Kellogg essentially agreed to do what it was already bound to do—pay Ryan a $175,000 bonus for his work as a floor broker at the firm, but at a later date than originally bargained for by the parties. Again, General Obligations Law § 5-701 (a) (1) and § 5-1105 do not come into play if Ryan's testimony is accepted by the jury, as it was.

Kellogg also cites General Obligations Law § 5-1103, apparently on the theory that

> "[t]he alleged oral 'amended agreement' described by Ryan—to take a $6,730.77 bonus in 2003 in lieu of $175,000, and to require Kellogg to still pay the full $175,000 at the end of the following year—[was] not only an attempt to modify his prior (alleged) 'guaranteed bonus' agreement, but also a *post hoc* effort to orally modify the agreed upon at will arrangement with Kellogg."

But Ryan never testified that he agreed to accept a bonus of $6,730.77 (two weeks' pay, given his base salary of $175,000) in lieu of the bonus that was already due and owing to him as of the end of 2003. He agreed to, and did, remain at Kellogg through 2004, but Kellogg was certainly still free to fire him at any time during 2004. Further, the one-year delay in payment, if viewed as a modification without consideration, benefitted Kellogg, not Ryan and so, because not in writing, was unenforceable by Kellogg (*see e.g. Matter of Crea*, 27 NY2d 339 [1971] [where son owed money to father-testator's partnership, oral modification without consideration did not terminate son's liability and therefore debt should have been included in estate as asset]).

Finally, *Truelove v Northeast Capital & Advisory* (95 NY2d 220 [2000]) does not bar Ryan from recovering attorney's fees pursuant to Labor Law § 198 (1-a), as Kellogg contends. Truelove brought suit under article 6 of the Labor Law to recover the unpaid balance of a bonus he was awarded by his employer in December 1997, payable in quarterly installments during 1998. He alleged that this bonus amounted to "wages," which Labor Law § 190 (1) defines as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." Truelove, who resigned after the first bonus installment payment was made, claimed that his employer violated Labor Law § 193 by enforcing an express condition in its bonus plan predicating payment of each quarterly installment

on continued employment. Section 193 prohibits an employer from making "any deduction from the wages of an employee" unless permitted by law or authorized by the employee for certain payments made for the employee's benefit (see Labor Law § 193 [1] [a], [b]).

We concluded that Truelove's bonus did not fall within the meaning of "wages" in section 190 (1) because it constituted "[d]iscretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship," whereas "the wording of the statute, in expressly linking earnings to an employee's labor or services personally rendered, contemplat[ed] a more direct relationship between an employee's own performance and the compensation to which that employee [was] entitled" (95 NY2d at 224). We also rejected Truelove's argument that he acquired a "vested right to the bonus payments once [his employer] declared that a bonus would be paid and calculated the amount of that bonus" (id. at 225). Citing our decision in Hall (supra), we noted that "the [employer's] bonus plan explicitly predicated the continuation of bonus payments upon the recipient's continued employment status" (id.).

■ Unlike the situation in Truelove, Ryan's bonus was "expressly link[ed]" to his "labor or services personally rendered" (95 NY2d at 224); namely, his work as a floor broker for Kellogg. Further, Ryan's bonus had been earned and was vested before he left his job at Kellogg; its payment was guaranteed and non-discretionary as a term and condition of his employment (see Giuntoli v Garvin Guybutler Corp., 726 F Supp 494, 509 [SD NY 1989] ["bonus payments, already due and vested . . . fall within the definition of wages in § 190"]). Since Ryan's bonus therefore constitutes "wages" within the meaning of Labor Law § 190 (1), Kellogg's neglect to pay him the bonus violated Labor Law § 193 (see Pachter v Bernard Hodes Group, Inc., 10 NY3d 609, 617 [2008]), and entitles Ryan to an award of attorney's fees under Labor Law § 198 (1-a).

We have considered Kellogg's remaining arguments and find them to be without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.