16-3966-cv
Rana v. Islam, Prova

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2017
No. 16-3966-cv

MASHUD PARVES RANA,
Plaintiff-Appellee,

- v. -

MONIRUL ISLAM,
Defendant-Appellant,

FAHIMA TAHSINA PROVA,
Defendant.

ARGUED: OCTOBER 24, 2017
DECIDED: APRIL 6, 2018

Before:    JACOBS, SACK, and PARKER, Circuit Judges.

Plaintiff-Appellee Mashud Parves Rana brought this action against his former employers, Monirul Islam and Fahima Tahsina Prova, alleging violations of various state and federal labor and human trafficking laws.  Over a 15-month period, the defendants defied numerous orders of the district court (Sidney H. Stein, Judge), and the district court granted Rana's motion to strike the defendants' answer and enter a default judgment.  Defendant Islam, pro se, appeals the district court's damages order.  We vacate in part and remand

1

because cumulative liquidated damages may not be awarded for the same course of conduct under both the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), NYLL §§ 190 et seq. & 650 et seq.

> D. BRETT KOHLHOFER (Matthew Larrabee, on the brief), Dechert, LLP, New York, N.Y. and Washington, D.C., for Appellee Mashud Parves Rana.
>
> MONIRUL ISLAM, pro se.

Per Curiam:

Mashud Parves Rana filed a complaint against his former employers, defendant-appellant Monirul Islam and defendant Fahima Tahsina Prova, alleging, inter alia, that his employment conditions violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 et seq., the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190 and 650 et seq., and the common law of torts. After the defendants ignored five district court orders to participate in discovery, and used other dilatory tactics, the district court (Sidney H. Stein, Judge) granted Rana's motion pursuant to Federal Rule of Civil Procedure 37 to strike the defendants' answer and enter a default judgment. Following a damages inquest, the district court awarded Rana $922,597.31.[1] Islam, pro se,

---

[1] The district court awarded damages as follows:
- New York Minimum Wage: $24,834.50
- NYLL Overtime: $85,911.39
- NYLL Spread of Hours: $3,931.75
- NYLL Liquidated Damages: $114,677.64
- FLSA Liquidated Damages: $66,062
- Breach of Contract: $9,047.96
- Recordkeeping Violations: $5,000

appeals the district court's damages calculation, arguing chiefly that there were no damages because Rana was not mistreated.

While Islam fails to raise any meritorious arguments, the case presents an issue that has split district courts in this Circuit. We conclude that, because New York Labor Law does not call for awards of NYLL liquidated damages on top of liquidated damages under the FLSA, district courts may not award cumulative liquidated damages for the same course of conduct under both statutes. We therefore vacate in part and remand to amend the liquidated damages calculation.

## I

Rana, a Bangladeshi national, alleged that he was employed as a domestic worker by Islam and Prova (who are married) for almost nineteen months. Islam is a Bangladeshi diplomat who was serving as the Consul General of Bangladesh in New York City during the time of Rana's employment.

Rana alleged that the defendants hired him in Bangladesh, promising good working conditions and a monthly wage of $3,000. But once Rana arrived in the U.S., the defendants seized his passport and visa, confined him to their apartment, and subjected him to "slavery-like conditions," including:

- Requiring work from 6:30 am to 11:00 pm, at a minimum, seven days a week, without days off.
- Not paying Rana for his services.
- Inflicting physical abuse: Islam hit Rana twice, once for asking if he would ever receive his salary, and again when Rana told Islam that he did not want to follow him to his next posting in Morocco.
- Inflicting verbal abuse and threats of violence.

---

- Emotional Distress: $241,200
- Damages Offset: ($13,005)
- Punitive Damages: $316,309.96
- Prejudgment Interest: $68,627.11

- Forcing Rana to sleep on a mattress on the kitchen floor in one apartment, and in a storage room in another.
- Giving Rana nothing but expired or leftover food to eat.

On March 2, 2014, Rana fled the defendants' apartment while they were out, and made a report at a New York City Police precinct.

Rana filed suit against the defendants on March 21, 2014, and Islam and Prova, through counsel, moved to dismiss the complaint. Islam's affidavit denied that he mistreated Rana, and advised that he had relocated to Bangladesh's Embassy in Morocco. The district court denied the defendants' motion to dismiss.

Following denial of the motion to dismiss, proceedings were slowed by defendants' tactics. Between May 2015 and May 2016:

- Islam and Prova filed their answer three months late.
- Islam and Prova failed to make initial disclosures, respond to interrogatories, appear for depositions, or produce documents in compliance with the district court's scheduling order, all despite receiving multiple extensions.
- Islam and Prova failed to respond to an order to inform the district court as to: whether the defendants would participate in discovery; whether Islam had plans to either leave Morocco to be deposed, or if Moroccan government officials would allow him to be deposed in country; or when Prova could be deposed in New York or London.
- After two years of discovery, Islam and Prova produced a single document: a personal letter Islam sent to the court denying that he and Prova abused Rana.

The district court warned Islam and Prova five times between May 2015 and May 2016 that failure to comply with discovery orders could result in sanctions--with no effect.

Defendants' counsel moved to withdraw. After initially denying that motion, the district court granted it because the "defendants' continuing failure to cooperate in this litigation has rendered it unreasonably difficult for [counsel] to continue the representation." Rana v. Islam, No. 14-CV-1993(SHS), 2016 WL 859859 at *1 (S.D.N.Y. March 1, 2016). On May 12, 2016, the district court granted Rana's motion to strike Islam's answer, entered a default judgment pursuant to Fed. R. Civ. P. 37, and set a damages inquest for September 7, 2016--at which the defendants again failed to appear, despite being notified.

At the damages inquest, in addition to Rana's testimony, Rana's physician testified that he had post-traumatic stress disorder, major depressive disorder, panic attacks, and generalized anxiety disorder, while his psychologist testified that he had post-traumatic stress disorder and major depressive disorder. The psychologist also testified that Rana has nightmares about his abuse, dissociative reactions (in which he believes he is back at Islam and Prova's apartment), fears trusting anyone, has lost interest in hobbies and social interactions, is unable to relate to anyone but his mother and sister, and has diminished interest in life.

After the damages inquest, the district court issued findings of fact and conclusions of law, and granted Rana $922,597.31 in damages. Of importance for this appeal, the district court granted NYLL liquidated damages of $114,677.64, along with FLSA liquidated damages of $66,062.

After being granted "the maximum extension allowable" under the law to appeal, Islam filed a pro se appeal from the September 26, 2016 damages order "award[ing] damages of $922,597.31 in favour of Rana against Islam and Prova." Supp. App'x at 565, 567. In addition to general denials about Rana's treatment, Islam raises multiple arguments for why the district court's damages calculation is incorrect. All of Islam's arguments are either totally unsupported and unsubstantiated, or are based on documents outside the record.

In response, Rana raises three arguments. First, he argues that this Court lacks jurisdiction to review the default judgment, and that in any event, the grant of default was not an abuse of discretion. Second, the damages calculation is not clearly erroneous, and the grant of punitive damages was not an abuse of

5

discretion. Third, the defendants should not be identified as <u>pro se</u> litigants because Islam is a high-ranking Bangladeshi government official who was represented for most of the district court proceedings.

## II.

We lack jurisdiction to review the default judgment. Our jurisdiction to hear an appeal is limited by Fed. R. App. 3(c), which requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. 3(c)(1)(B); <u>see also</u> <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 147 (2012) ("We have held that Rule 3's dictates are jurisdictional in nature." (internal citation and quotation marks omitted)). Islam's notice of appeal states that he appeals "from the . . . order entered on September 26, 2016 that . . . [a]ward[s] damages of $922,597.31 in favour of Rana against Islam and Prova." Supp. App'x at 567. We "construe notices of appeal liberally, taking the parties' intentions into account." <u>Meilleur v. Strong</u>, 682 F.3d 56, 60 (2d Cir. 2012) (internal citation and quotation marks omitted). We are especially lenient with regard to <u>pro se</u> litigants. <u>See</u> <u>Elliot v. City of Hartford</u>, 823 F.3d 170, 172 (2d Cir. 2016) ("[A] notice of appeal filed by a <u>pro se</u> litigant must be viewed liberally, and not every technical defect in a notice of appeal constitutes a jurisdictional defect." (internal citation and quotation marks omitted)). Even with a <u>pro se</u> litigant, however, jurisdiction "depends on whether the intent to appeal from [a] decision is clear on the face of, or can be inferred from, the notice[] of appeal." <u>New Phone Co. v. City of N.Y.</u>, 498 F.3d 127, 131 (2d Cir. 2007); <u>see also</u> <u>Kowsh v. Bd. of Elections</u>, 99 F.3d 78, 80 (2d Cir. 1996) (per curiam) ("The Federal Rules of Appellate Procedure require that an appellant specify in his notice of appeal the order or decision of which review is sought."). The notice of appeal does not permit an inference that Islam intended to appeal from the underlying default judgment; the default judgment came in an opinion and order issued on May 12, 2016, and did not award any damages. <u>See</u> <u>Kowsh</u>, 99 F.3d at 80 (the court lacked jurisdiction over judgment beyond discrete portion referenced in the notice of appeal). Accordingly, we only review the district court's damages award.

## III.

We review a district court's factual findings and damages calculation for clear error, and applicable questions of law de novo. Brown v. C. Volante Corp., 194 F.3d 351, 356 (2d Cir. 1999); Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1029 (2d Cir. 1995). The imposition of punitive damages is reviewed for abuse of discretion. Design Strategy, Inc. v. Davis, 469 F.3d 284, 302 (2d Cir. 2006).

Islam only raises factual challenges to the damages calculation, and these arguments are either entirely unsupported, or depend on documents that are outside the record on appeal.[2] We decline to consider extra-record assertions and documents. See Fed. R. App. P. 10(a)(1); Loria v. Gorman, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002) ("Ordinarily, material not included in the record on appeal will not be considered."); Weinstock v. Columbia Univ., 224 F.3d 33, 46 (2d Cir. 2000) (Evidence that is "not part of the record . . . cannot be considered in deciding this case." (internal citation omitted)).

The district court's damages calculation is sound: the district court fully examined the record, sua sponte examined Rana under oath, and provided detailed findings supporting its calculations, including finding that Rana suffered a host of psychological harms. However, one issue needs to be decided in order to resolve a split among the district courts of this Circuit. The district

---

[2] Islam claims that: [i] he placed "around $30,000" in a TD Bank account for Rana, in addition to loaning Rana's family $25,000 in Bangladesh, Appellant's Br. at 16; [ii] any claim that Rana worked overtime is false because Rana worked only two to three hours a day, fewer than six days a week; [iii] liquidated damages are a harsh punishment conjured up by lawyers to squeeze a grieving family (Islam's son died in New York in October 2012); [iv] there could be no breach of contract because the wage agreement was made on "good-faith" only, id. at 17; [v] there can be no record-keeping violation because Rana received proof of payments deposited in a TD Bank account for him; [vi] Rana enjoyed his time living with the defendants, so he could not have suffered emotional distress; and [vii] any damages offset, punitive damages, and interest is "fake and made-up," id. at 18.

court granted Rana cumulative liquidated damages awards, one award under the FLSA, 29 U.S.C. § 201 <u>et seq.</u>, and another under the NYLL, N.Y. Lab. L. § 190 <u>et seq.</u> We now hold that this is impermissible.

**IV.**

The FLSA provides that an employer who underpays an employee is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed" the original unpaid wage amount. <u>Id.</u> § 260.

The New York State Legislature has amended the NYLL liquidated damages provision twice since 2009, making it easier for employees to claim liquidated damages. <u>See</u> <u>Inclan v. New York Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015). Prior to 2009, an employee bore the burden to demonstrate the employer's willful failure to pay wages, and upon establishing this, the employee could be awarded as liquidated damages an amount up to 25% of the total amount of wages due. <u>See</u> <u>Ryan v. Kellogg Partners Institutional Servs.</u>, 19 N.Y.3d 1, 10 n.8 (2012). But in 2009, the liquidated damages provision was amended to bring it more closely in line with the FLSA; the burden was shifted to the employer to "'prove[ ] a good faith basis to believe that its underpayment of wages was in compliance with the law' in order to avoid liquidated damages." <u>Id.</u> (citing 2009 N.Y. Laws ch. 372 § 1, amending N.Y. Labor Law § 198(1–a)).

In 2010, the NYLL liquidated damages provision was amended again so that an employee may "recover the full amount of any underpayment, all reasonable attorney's fees, [and] prejudgment interest as required under the civil practice law and rules[.]" N.Y. Lab. Law § 198. For good measure, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages

equal to one hundred percent of the total amount of the wages found to be due" must also be paid.  Id.

While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed "to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506(RLM), 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014); see also Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14-CV-10234(JGK)(JLC), 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016) (The 2009 and 2010 NYLL amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute.").

We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.  Double recovery is generally disfavored, cf. Reilly v. Natwest Mkts. Grp., Inc., 181 F.3d 253, 265 (2d Cir. 1999), and it is clear that the New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA, see Bill Jacket, 2009 A.B. 6963, ch. 372, at 6 (expressing the bill sponsor's intent to "conform New York law to the Fair Labor Standards Act").  Given the background assumption disfavoring double recovery, we conclude that if the New York State Legislature intended to provide multiple recoveries, it would have done so expressly.

The defendants did not argue the point, and pursued a position of all or nothing; so, to be prudent, the plaintiff should receive the larger of the two liquidated damages awards.  We therefore vacate the liquidated damages award under the FLSA ($66,062.00) in favor of the NYLL award ($144,677.64).[3]

---

[3] Whether a plaintiff entitled to liquidated damages in the context of both the NYLL and FLSA should always receive the larger of these damages amount we leave to be decided in a future case.  Liquidated damages are greater under the NYLL because New York's minimum and overtime wage levels are higher than the federal minimum wage.  New York also awards "spread of hours pay" in addition to minimum and overtime wages, in which an employee who works

\* \* \*

The damages order is **VACATED** in part and **REMANDED** for the district court to revise the calculation to conform with this opinion.

---

more than ten hours in one day must be paid an additional hour at the state minimum wage amount.  <u>See</u> 12 N.Y. Comp. Code R. & Regs. § 142-2.4.